

Nina Huerta (SBN 229070)
nhuerta@lockelord.com
Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Tel: (213) 485-1500
Fax: (213) 485-1200

Jennifer A. Kenedy (*pro hac vice* application pending)
jkenedy@lockelord.com
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 443-0700
Fax: (312) 443-0336

Attorneys for Plaintiff
FIDELITY BROKERAGE SERVICES LLC

FILED
13 APR 10 PM 2:37
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: ___

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC, Plaintiff, v. DEAN HEIMBACH, Defendant. | CASE NO. SACV13-0573 AG (ANx) |
| | **COMPLAINT FOR:** **1. MISAPPROPRIATION OF TRADE SECRETS [CAL. CIV. CODE. §§ 3426 *et seq.*];** **2. BREACH OF CONTRACT;** **3. BREACH OF DUTY OF LOYALTY; AND** **4. INJUNCTIVE RELIEF.** |

ORIGINAL



Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

PAID
APR 10 2013
Clerk, US District Court
COURT 4612

Plaintiff Fidelity Brokerage Services LLC ("Fidelity"), by its undersigned counsel, hereby brings this action for injunctive relief against Defendant Dean Heimbach ("Heimbach") for misappropriation of trade secrets, breach of contract and breach of the duty of loyalty, as follows:

**NATURE OF THE CASE**

1. Through this action, Fidelity seeks immediate injunctive and other relief to stop Defendant Dean Heimbach's continuing misappropriation of Fidelity's trade secrets, and to stop Heimbach from improperly soliciting Fidelity customers in violation of California law and his employment agreement.

2. Heimbach, a former Fidelity Account Executive, has taken Fidelity's confidential and trade secret customer information that he had access to by virtue of his employment with Fidelity, and is using that information to unlawfully solicit Fidelity customers to transfer their business to him at his new financial services firm, competing brokerage institution LPL Financial, LLC ("LPL").

3. On December 13, 2012, Heimbach abruptly resigned from Fidelity and immediately joined Capstone Affluent Strategies ("Capstone"), which is affiliated with LPL. On that same day, when Fidelity reminded Heimbach of his legal and contractual obligations to Fidelity, he indicated that he had no intention of violating them. Despite those obligations, Heimbach took Fidelity's confidential and trade secret customer information and began using and continues to use that information to unlawfully target Fidelity customers to solicit them to transfer their accounts to LPL. Fidelity has recently learned that Heimbach has misappropriated not only customer contact information, but also customers' financial and Fidelity account information.

4. Fidelity has done all it reasonably could do to avoid court intervention in this matter. When Fidelity first heard reports that Heimbach may have misappropriated Fidelity customer information and used it to solicit Fidelity customers in violation of his contractual obligations and California law, it immediately sent a cease and desist letter to Heimbach asking that all Fidelity

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

customer information be returned and that Heimbach cease any solicitation of Fidelity customers. Additionally, Fidelity counsel initiated a dialogue with counsel for LPL, requesting that Heimbach sign an affidavit either indicating that he did not have Fidelity customer information in his possession or agreeing to return all such information, and requesting that LPL confirm that Heimbach would stop any solicitation of Fidelity customers. Although Heimbach signed the affidavit, returned what he represented to be all Fidelity customer information in his possession and expressly and repeatedly denied any solicitation of Fidelity customers, Fidelity has recently received a report from a customer demonstrably showing that Heimbach's representations to LPL and Fidelity counsel were untrue.

5. Since Heimbach signed the affidavit attesting that all Fidelity customer information had been returned and denied ever soliciting Fidelity's customers, Fidelity has learned that Heimbach solicited a Fidelity customer by calling and asking to meet that customer in his home to discuss moving his accounts to Heimbach at his new firm. At that meeting, Heimbach brought pre-filled in documents bearing the Fidelity customer's private financial and account information, prompting that customer to call Fidelity to express concern that Heimbach still had his personal and Fidelity account information when he no longer worked for Fidelity.

6. Fidelity now believes that Heimbach provided false information about the nature of his interactions with Fidelity customers and about what customer information he removed from Fidelity and still possesses to counsel for Fidelity and LPL. The report demonstrates that, despite his sworn affidavit attesting otherwise, Heimbach possesses Fidelity customer account information and is using that information to solicit customers.

7. Assuming, *arguendo*, that Heimbach is permitted under California law to use Fidelity's trade secret customer information to announce his affiliation with LPL, Heimbach already made such announcement when he first joined LPL. Heimbach has no legal basis to retain any Fidelity trade secret information.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Heimbach and LPL do not appear to contest this point as they agreed to return all Fidelity customer information in Heimbach's possession and to have Heimbach sign an affidavit attesting he had done so. As shown by the recent report from a Fidelity customer that Heimbach solicited him and arrived with forms containing the customer's personal and Fidelity account information, Heimbach still possesses Fidelity trade secret customer information and is using that information to solicit Fidelity's customers. This conduct is unlawful under Heimbach's contract with Fidelity and California law. Accordingly, Heimbach should be required to return any such information to Fidelity and ordered to cease any solicitation of Fidelity's customers.

8. After conferring in good faith with LPL counsel, on behalf of Heimbach, to resolve these issues and after determining based on the above that the parties are unable to resolve them, Fidelity now seeks a TRO requiring Heimbach to return to Fidelity any and all records and/or documents in any form, received or removed from Fidelity by Heimbach, containing information pertaining to customers Heimbach served or whose name became known to Heimbach while in the employ of Fidelity, including, but not limited to, any customer list or documents, replicated or "recreated" by Heimbach by memory or otherwise, using Fidelity's confidential and trade secret information concerning Fidelity's customers. In addition to seeking the return of Fidelity confidential and trade secret customer information in Heimbach's possession, Fidelity further seeks a TRO prohibiting Heimbach from directly or indirectly soliciting Fidelity's customers, as required by Heimbach's contract with Fidelity. The requested relief, including the TRO and OSC, are necessary to end Heimbach's unlawful activities, which include misappropriation of Fidelity's trade secrets, breach of contract and breach of the duty of loyalty.

9. Fidelity and Heimbach are subject to the arbitration rules and regulations of the Financial Industry Regulatory Authority ("FINRA") pursuant to FINRA Rule 13200. Accordingly, concurrently with the filing of the *Ex Parte* Application for

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

TRO ("Application"), Fidelity also is filing a Statement of Claim with FINRA seeking binding arbitration of this dispute pursuant to Rule 13804(a)(2). Although the merits of this case will likely be resolved in arbitration before FINRA, pursuant to FINRA Rule 13804, Fidelity is ***required*** to seek and ***obtain*** immediate injunctive relief in a court of competent jurisdiction ***before*** an expedited FINRA arbitration is permitted to proceed. Once the TRO is issued by this Court, an expedited arbitration will be scheduled with FINRA within fifteen (15) days of the entry of the TRO. If no TRO is issued, however, this case cannot be heard by FINRA on an expedited basis and, instead, will be assigned to a standard-track arbitration, which would delay a hearing on the merits for a year or more. ***Temporary and/or preliminary injunctive relief, therefore, is required to preserve the status quo until the merits of this case can be adjudicated by FINRA.***

## PARTIES

10. Fidelity is a limited liability company, whose sole member is Fidelity Global Brokerage Group, Inc., a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business located in Boston, Massachusetts. Fidelity is qualified to conduct business, and carries on business in the State of California, and in particular, in Orange County, California.

11. Heimbach is a former Account Executive of Fidelity's Brea, California investor center, is a citizen of the state of California and, upon information and belief, resides in Orange County, California. Heimbach presently is employed by Capstone, an affiliate of LPL, in its Newport beach, California office.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Indeed, Heimbach's conduct threatens at least 411 customer households, representing in excess of $290 million in assets under Fidelity management.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because Heimbach resides in this District, and a substantial part of the events giving rise to Fidelity's claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Fidelity's Unique Customer Development Practices

14. Fidelity and its affiliates provide a variety of financial services—such as retirement services, investment planning, wealth management, securities execution and clearing, life insurance services, and equity services—to Fidelity customers, with whom Fidelity typically enjoys significant, long-term relationships. Fidelity offers individual investors a broad assortment of trading and cash management features including buying and selling stocks, bonds, options and more than 5,100 mutual funds from Fidelity and other well-known fund companies.

15. Fidelity is unique in the retail brokerage field because Fidelity does not have its Account Executives make "cold calls" to persons who have no relationship with Fidelity, or who were not referred to Fidelity. Fidelity requires its Account Executives to develop service relationships based upon leads that Fidelity provides. Fidelity provides leads to its Account Executives from two primary sources.

16. First, Fidelity forwards information to its representatives from prospective customers who initiate contact with Fidelity either by telephone, over the internet, or in person. Fidelity and its affiliates devote tens of millions of dollars per year toward attracting customers to Fidelity's various businesses in a variety of means. Fidelity arranges to publish and broadcast national and local advertisements which invite potential customers to contact Fidelity; Fidelity maintains an interactive internet page that allows interested persons to establish relationships with Fidelity; Fidelity maintains multiple call centers that prospective customers can use to initiate contact with Fidelity; and, Fidelity maintains prominent retail locations which prospective customers can visit. A large portion of Fidelity's business is derived from this initial customer contact that is generated by significant investments of time,

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

labor, and capital by Fidelity.

17. Second, Fidelity forwards information to its representatives regarding customers, with whom Fidelity already has a relationship, when those customers experience "triggering events," such as Fidelity 401(k) distributable events, which may lead to interest in Fidelity's retail financial services. In addition, representatives may be assigned to service customers previously serviced by other representatives in certain circumstances, such as if the former representative moves, leaves Fidelity, or is promoted to another position. A significant portion of Fidelity's business is derived from servicing the needs of Fidelity's existing customers. Fidelity's lead-based approach to supporting its Account Executives distinguishes Fidelity from other full-service brokerages, where individual brokers, rather than the firm, are responsible for establishing customer relationships. Fidelity's success in its lead-based approach is based on the typically long-standing relationships it enjoys with its customers.

**Fidelity's Trade Secret Customer Information**

18. Fidelity's success with its unique lead-based approach to supporting Account Executives, such as Heimbach, is directly tied to Fidelity's trade secret customer information, which is among Fidelity's most important assets. Fidelity's trade secret customer data includes the names of and contact information for Fidelity customers, and includes financial information relating to those customers, such as customer financial statements, investment goals, investment history, assets, income, and net worth. Although certain information might be publicly available—such as an individual's name or published home telephone numbers—only a limited number of Fidelity employees know who among the general public are Fidelity customers, and therefore have a specific need for investment services. Fidelity developed its customer data through a significant investment of time, labor, and capital, as described above.

19. Fidelity maintains its customer data in confidence, both to preserve

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Fidelity's competitive advantage in its customer base and to meet customer expectations that Fidelity will maintain sensitive, personally identifiable information (including their identity as a customer, contact information and financial information) in confidence. Fidelity derives substantial economic value from preserving its customer data as a trade secret. Although individual customers are periodically subject to random solicitations from Fidelity competitors, no competitor can effectively target a set of Fidelity customers and address their needs without access to Fidelity's trade secret customer data. In this way, maintaining the confidentiality of Fidelity's trade secret customer data provides Fidelity with a significant competitive advantage over its competitors.

**Fidelity's Efforts To Preserve The Confidentiality Of Its Customer Data**

20. Fidelity vigilantly preserves its trade-secret customer data so that it does not become available to competitors, who could use the data to divert customers without the investment of time, labor, and capital that Fidelity made to compile the information. Fidelity does not provide its trade secret customer data to competitors. Fidelity maintains its trade secret customer data on password-protected computers, and only employees whose jobs require access to the customer data are provided with such access. Fidelity maintains a Confidentiality Policy, educates its employees on the policy and requires employees, including Heimbach, to sign Employee Agreements in which each employee agrees not to use or disclose Fidelity Confidential Information, including Fidelity customer information, outside of Fidelity.

**Heimbach's Employee Agreement With Fidelity**

21. Fidelity maintains and advises its employees of a Confidentiality Policy that is displayed on Fidelity's intranet. A true and correct copy of Fidelity's Confidentiality Policy is attached hereto as Exhibit 1 and incorporated by reference as though fully set forth herein. Fidelity periodically reminds its employees of this policy. Fidelity also preserves confidential and trade secret customer data by

requiring each employee to execute a standard Fidelity Employee Agreement.

22. On June 18, 2010, at the inception of his employment, Heimbach signed an Employee Agreement as a condition of his employment with Fidelity, which Fidelity requires of all its financial representatives. A true and correct copy of Heimbach's Employee Agreement is attached hereto as Exhibit 2 and is incorporated by reference as though fully set forth herein.

23. As consideration for the Employee Agreement Heimbach executed, Fidelity hired and continued to employ him, compensated him throughout his employment, and provided him with introductory and continuing on-the-job training. Fidelity assigned Heimbach a list of customers to service on behalf of Fidelity and provided Heimbach with the above-described leads to enable him to succeed at Fidelity. Fidelity further provided Heimbach with support services; paid for facilities, computer equipment, market reporting services, and all other business expenses; and registered Heimbach with the New York Stock Exchange, National Association of Securities Dealers (n/k/a Financial Industry Regulatory Authority), and the American Stock Exchange. Fidelity provided Heimbach with sales assistance, research, the benefit of Fidelity advertising, goodwill and name recognition, access and use of experts in asset management, tax, estate planning and insurance, and with promotional marketing and sales support.

24. At the time of his departure, Heimbach was an Account Executive at the Brea investor center. As an Account Executive, Heimbach provided services on Fidelity's behalf to the Fidelity customers he was assigned. In order for Heimbach to service these accounts, he required and was given access to these customers' confidential personal and financial information. At the time of his departure, Heimbach's assigned list was comprised of approximately 411 households, representing approximately $290 million in assets under Fidelity management.

25. In consideration for the foregoing benefits and opportunities that Fidelity provided to Heimbach, Heimbach agreed in his June 18, 2010 Employee Agreement

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

as follows:

1. Confidential Information. To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customers, prospect, vendor and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

* * *

3. Company Property. Upon termination of Employee's employment in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

* * *

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

> 6. Non-Solicitation. In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

(Exhibit 2 at ¶¶ 1, 3, 6.)

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

26. In addition, Heimbach expressly consented in his Employee Agreement to the issuance of injunctive relief should he breach the Employee Agreement:

> 10. Miscellaneous. … Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors and its assigns. This agreement is governed in accordance with Massachusetts law and is signed under seal.

(Exhibit 2 at ¶ 10.)

**Heimbach Was Reminded When He Resigned Of His Obligations Not To Solicit Fidelity Customers And To Preserve The Confidentiality Of Fidelity's Trade Secret Customer Data, And Heimbach Assured Fidelity That He Would Abide By His Obligations.**

27. Heimbach resigned from Fidelity on Thursday, December 13, 2012, by personally delivering a handwritten resignation letter to Maggie Steelman, the Branch Services Manager for the Brea investor center, and by emailing his branch office manager Linda Park to notify her of his resignation. When Heimbach resigned, Ms.

Park reminded him of his contractual obligations to Fidelity and specifically advised him that Fidelity confidential customer information may not be used when he leaves Fidelity. When Ms. Park reminded him of this, as well as of his non-solicitation obligations, Heimbach told Ms. Park that he would not solicit clients and would abide by his contractual obligations.

**Heimbach's Misappropriation And Use Of Fidelity's Trade Secret Customer Information And Solicitation of Fidelity Customers**

28. Shortly after Heimbach resigned, Fidelity learned that he was immediately starting employment as an Investment Executive with Capstone, a financial services firm located in Newport Beach, California which offers brokerage services through LPL, a national brokerage firm. Both Capstone and LPL compete with Fidelity in offering investment planning, wealth management, and other financial services to customers.

Heimbach Immediately Sent Mailings To Fidelity's Customers

29. Soon after Heimbach resigned from Fidelity and joined Capstone and LPL, Fidelity received reports that Fidelity customers were being contacted by Heimbach regarding his new position with LPL. These customers reported that they received letters from Heimbach.

30. The only way Heimbach could have had knowledge of these customers and their contact information is by using confidential and trade secret information that he misappropriated from Fidelity during his employment. The reports flowing in from Fidelity's customers, therefore, strongly suggested that Heimbach had in his possession and was using Fidelity's confidential and trade secret customer information to solicit Fidelity's customers on behalf of his new employer, LPL.

Fidelity's Efforts To Resolve This Situation Without Court Intervention

31. After learning of these customer reports of mailings, Fidelity sent a letter to Heimbach on January 4, 2013 indicating that Fidelity had reason to believe he was contacting and soliciting Fidelity customers, and asking that he cease and desist from



Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

this conduct immediately. Fidelity also reminded him that, pursuant to his Employee Agreement, he was and is not permitted to use or disclose Fidelity customer information, including names, addresses, email addresses, telephone numbers and account information (which would include portfolio worth, asset distribution, risk tolerance, and investment strategy and goals). In addition, Fidelity formally requested that Heimbach return to Fidelity all such confidential and trade secret information in his possession. Fidelity also asked Heimbach to review and sign an affidavit that stated that he had returned to Fidelity and/or did not have any Fidelity customer information. Fidelity's January 4, 2013 letter was copied to Peter Gillies, Associate Counsel at LPL. Copies of the employee agreement Heimbach signed with Fidelity and the proposed affidavit were enclosed with the letter.

32. On January 12 and again on January 19, Fidelity sent Heimbach letters reminding him of his ongoing obligations to Fidelity, including his obligation not to solicit Fidelity customers for one year and to not use or disclose any Fidelity Confidential Information, including information about Fidelity customers. These letters also included a copy of Heimbach's Employee Agreement with Fidelity.

33. In an effort to resolve this matter and avoid litigation, Fidelity also reached out to Mr. Gillies about its concerns that Heimbach was soliciting customers and using Fidelity confidential customer information to contact Fidelity customers on behalf of LPL. Fidelity informed Mr. Gillies that Fidelity wanted Heimbach to sign an affidavit verifying that (1) Heimbach in fact had no such Fidelity confidential or trade secret information in his possession in any form, and (2) Heimbach had not provided any such information to any third party, including LPL. In response, Mr. Gillies informed Fidelity that Heimbach had "memorized names" of the customers he worked with while at Fidelity, looked up their contact information on the internet, and then used that information to send a letter to those customers announcing his new job and contact information at LPL. Mr. Gillies told Fidelity that Heimbach only sent a written announcement of his new employment and was not soliciting Fidelity

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

customers. Given that Heimbach had already announced his new employment and no longer had a legally permissible reason to possess Fidelity trade secret customer information, Mr. Gillies agreed to have Heimbach sign a revised affidavit which indicated he was returning a copy of all customer information in his possession, deleting any remaining copies and attesting that he would honor his contractual obligations to Fidelity.

34. On February 5, 2013, Fidelity received the affidavit signed by Heimbach on January 24, 2013. In connection with signing the affidavit, Heimbach returned to Fidelity a list of 89 customers, including their first and last names and addresses (including street, city, state and zip code). In the sworn affidavit, Heimbach attested that (1) he was returning to Fidelity a copy of all Fidelity customer information he had in his possession and that information was attached to the affidavit; and (2) he would abide by his contractual obligations to Fidelity going forward. Given the representation in the sworn affidavit and the return of the customer list, Fidelity considered the matter closed.

35. To Fidelity's surprise and alarm, Fidelity was troubled to learn that a customer had called Fidelity's internal complaint line – an anonymous line typically used by Fidelity employees – on March 13, 2013, to express a concern about Heimbach. The customer reported that Heimbach had recently called him and asked him to move his accounts from Fidelity to Heimbach at LPL and asked to meet. The customer agreed to meet Heimbach at his home. When they met, Heimbach had with him pre-filled out customer account forms with the customer's personal and Fidelity account information. The customer called the internal Fidelity line and reported this because he was concerned that Heimbach, who no longer worked for Fidelity, had his personal and account information.

36. This report concerned Fidelity for two reasons. First, the customer's report contradicted the representations Heimbach and Mr. Gillies made that Heimbach had not solicited customers, but had only sent an announcement about his

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

new position. Second, the customer's report contradicted Heimbach's sworn affidavit, which indicated he had returned all Fidelity information in his possession to Fidelity. The only information Heimbach returned was the list of customers and their addresses, not customer account information. This report strongly suggested that Heimbach has customer account information in his possession, and lied about it in his affidavit.

37. Given this report, Fidelity began questioning the representations Heimbach had made in the affidavit. Fidelity reviewed the customer list he returned again and was skeptical that Heimbach could memorize 89 first and last names and the cities in which those customers lived, so Fidelity looked at the list and tried to find some of the individuals using www.whitepages.com with only that information. Based on a brief search, it appears there are multiple entries for many customers on Heimbach's list in the cities in which they live, and that some of the addresses on Heimbach's list are not available on the internet. Without additional information about these individuals, whether in written form or in Heimbach's memory, it is impossible to identify which of them is a Fidelity customer. This suggested to Fidelity that Heimbach may have misappropriated more customer information from Fidelity than he had represented.

38. In addition, after receiving the alarming March 13, 2013 report that Heimbach had Fidelity customer account information in his possession and was using it to solicit Fidelity customers to transfer their accounts to LPL, Fidelity reviewed a report evidencing Heimbach's daily customer screen shot look-up activity in the days leading up to his December 13, 2012 resignation to see if there was any unusual activity.

39. Fidelity's financial representatives, including Account Executives like Heimbach, utilize Fidelity's computer systems to access confidential customer screen shots as they service Fidelity customers. Fidelity's Account Executives use these customer screen shots because they provide all the most sensitive financial and

personal information necessary to service each customer's financial needs, including their names, social security numbers, addresses, telephone numbers, financial net worth, invested assets, information about all of their investments and other confidential and proprietary information about each Fidelity customer.

40. In reviewing the look-up activity in the 90 days prior to Heimbach's resignation, there were several days with a substantial number of screen shot look-ups often done in "surges" of looking up several customers in rapid-fire succession over the course of minutes. For example:

- On September 14th, Heimbach looked up 39 customers with 25 look-ups occurring in the 11 minutes between 2:40 and 2:51 p.m.
- On September 20th, Heimbach looked up 41 customers with 20 look-ups occurring in the 13 minutes between 12:05 and 12:18 p.m.
- On October 11th, Heimbach looked up 61 customers with 27 look-ups occurring in the 11 minutes between 3:29 and 3:40 p.m.
- On October 17th, Heimbach looked up 56 customers with 32 look-ups occurring in the 32 minutes between 4:01 and 4:33 p.m.
- On October 31st, Heimbach looked up 69 customers with 29 look-ups occurring in the 28 minutes between 11:49 and 12:17 p.m.
- On November 1st, Heimbach looked up 65 customers with 20 look-ups occurring in the 11 minutes between 1:32 and 1:43 p.m.
- On November 2nd, Heimbach looked up 57 customers with 19 look-ups occurring in the 17 minutes between 3:36 and 3:52 p.m.
- On November 29th, Heimbach looked up 39 customers with 19 look-ups occurring in the 12 minutes between 3:41 and 3:53 p.m.
- On November 30th, Heimbach looked up 64 customers with 18 look-ups occurring in the 14 minutes between 2:40 and 2:54 p.m.
- On December 5th, Heimbach looked up 66 customers with 34 look-ups occurring in the 35 minutes between 11:20 and 11:55 p.m.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

41. On December 13, 2012, the day Heimbach resigned at 3:56 p.m., he looked up 75 Fidelity customers including 23 customers in one 39-minute span.

42. In Ms. Park's years of experience at Fidelity, a representative on average looks up between 15-30 customers per day.

43. Fidelity requires, as part of its customer interaction policy, that representatives record qualifying customer interactions into a system called "Siebel", Fidelity's customer interaction software. Because account executives are to access a client's confidential information only to service the client's account, ordinarily a Siebel entry should accompany any account look-up. Of the 75 look-ups Heimbach did on the day he resigned, 54 of them did not have a corresponding Siebel entry reflecting a customer interaction. There is no legitimate Fidelity business purpose for accessing Fidelity confidential customer information for dozens of customers immediately before (and after) resigning without a corresponding entry in Siebel to reflect an interaction with that customer. Accordingly, Heimbach's look-up activity strongly suggests he was accessing Fidelity customer information for the improper purpose of removing it from Fidelity to use in his new position on behalf of a competitor.

44. In sum, Fidelity only recently learned that Heimbach has solicited Fidelity's customers to transfer their business from Fidelity to LPL. In particular, Fidelity reasonably believes, based on the above-detailed customer reports, that Heimbach has taken and misused Fidelity's confidential and trade secret customer information in an effort to solicit Fidelity customers, and then provided false information about the nature of his interactions with those customers and about the information he possesses to counsel for LPL and Fidelity. Additionally, despite signing an affidavit, for the reasons stated above, Fidelity is concerned that Heimbach has not returned and/or deleted all Fidelity confidential and trade secret customer information.

///

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

**The Threat Of Immediate And Irreparable Harm Fidelity Faces From Heimbach's Conduct**

45. Heimbach's conduct has irreparably harmed Fidelity and will continue to irreparably harm Fidelity if not stopped immediately. Indeed, the impact that Heimbach's conduct has and will continue to irreparably harm Fidelity's relationships with its customers, such as by losing goodwill, losing future business or referrals, as well as losing trust and confidence in securing inherently-private information, which cannot be calculated with precision and cannot be adequately compensated.

46. Fidelity's customer information, including the identity of Fidelity customers, is also required to be kept confidential under the Gramm-Leach-Bliley Act and its implementing regulations. The statute declares, "[i]t is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). The implementing regulation, known as Regulation S-P, prohibits the disclosure of so-called "nonpublic personal information" to third parties without consent. 17 C.F.R. § 248.10. Nonpublic personal information is defined to include customer lists from financial institutions, *even if those lists contain only names of Fidelity customers* because the identity of an individual as being a customer of a particular financial institution is specifically protected by the federal regulations. 17 C.F.R. § 248.3(t)(1); 17 C.F.R. § 248.3(u)(2)(i)(D). Indeed, these regulations also protect a customer's account information. 17 C.F.R. § 248.3(t)(1); 17 C.F.R. § 248.3(u)(1).

47. Fidelity customers rightfully have an expectation that their confidential contact and financial information, such as their net worth, risk tolerances, investment goals, and preferences, will be protected and not misused by departing employees. Thus, customers understandably are concerned when former Fidelity employees, such as Heimbach, have access to their information and are using it to solicit their business

at a new and different brokerage institution.

48. In other words, the damage to Fidelity's customer relationships has already occurred, is ongoing and is incalculable, as Fidelity cannot put a price on the value of its customer relationships or the damage caused when Heimbach took and improperly misused confidential and trade secret customer information on behalf of a competitor.

49. In short, Heimbach has engaged and continues to engage, in the following unlawful acts:

(a) Removal, use and/or disclosure of Fidelity trade secret customer information and misappropriation of the trade secret information contained in confidential Fidelity business records, including, specifically, the names, addresses, phone numbers, and other confidential financial and account information of Fidelity customers;

(b) Transmitting verbally, in writing or in any other manner for the use of Heimbach and/or Capstone or LPL, customers' contact and financial information contained in Fidelity's records;

(c) Soliciting and/or preparing to solicit Fidelity's customers to transfer their accounts from Fidelity to Heimbach at LPL; and

(d) Other such acts in violation of California law regarding trade secrets, and which are contrary to the terms, conditions and provisions of Heimbach's Employee Agreement with Fidelity.

50. Faced with Heimbach's recent solicitation of Fidelity's customers, his intentional misappropriation of Fidelity's confidential and trade secret customer information, his demonstrably false reports in response to Fidelity's attempts to work with Heimbach to resolve these issues, and the resultant irreparable harm to Fidelity's relationship with its customers, Fidelity is left with no alternative but to seek immediate redress from this Court and FINRA.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

51. All of the above statements are based on and supported by the supporting Declarations of Linda Park, Buddy Maclean, Eric Bronner, Michael MacDonald, and Leslie Blickenstaff, which are being filed concurrently with this Complaint and are hereby incorporated by reference.

**FIRST CLAIM FOR RELIEF**

**(Misappropriation of Trade Secrets - Cal. Civ. Code §§ 3426, *et seq.*)**

52. Fidelity hereby realleges and incorporates by reference the allegations of paragraphs 1 through 51 of the Complaint, inclusive, as though set forth in full.

53. The above-alleged facts constitute actual and threatened misappropriation of trade secrets by Heimbach pursuant to the Uniform Trade Secrets Act ("UTSA"), Cal. Civ. Code § 3426 *et seq.*, in one or more of the following respects.

54. Fidelity's above-described trade secrets, including the contact and confidential financial and account information of Fidelity customers, are subject to reasonable efforts by Fidelity to maintain their secrecy and/or confidentiality. Fidelity's customer information is not generally known.

55. Such information is also protected as "non-public" information under federal securities Regulation S-P. 17 C.F.R. § 248.3(t)(1); 17 C.F.R. § 248.3(u). Accordingly, Fidelity is required by federal statute to ensure that non-public customer contact, financial, and account information such as that misappropriated by Heimbach is not disclosed to third parties (such as LPL) without consent. 17 C.F.R. § 248.10.

56. Fidelity derives a significant economic benefit from maintaining the secrecy and confidentiality of the above-described trade secrets.

57. Fidelity faces an immediate threat of continuing irreparable harm, for which Fidelity lacks an adequate remedy at law, from Heimbach's ongoing misappropriation and misuse of Fidelity's trade secret customer information.

///

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

58. Unless Heimbach is preliminarily and permanently enjoined from the foregoing conduct, Fidelity will be irreparably harmed by:

(a) Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Fidelity and its customers;

(b) Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

(c) Potential future economic loss, which is presently incalculable.

59. Heimbach's conduct constitutes a willful and malicious misappropriation of Fidelity's trade secrets.

60. Thus, Fidelity is entitled to a temporary and/or preliminary injunctive relief.

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract - Non-Solicitation / Non-Disclosure / Assignment of Property)**

61. Fidelity hereby realleges and incorporates by reference the allegations of paragraphs 1 through 60 of the Complaint, inclusive, as though set forth in full.

62. Heimbach agreed not to solicit, directly or indirectly, in any manner or induce or attempt to induce any Fidelity customer for a period of one year after his separation from employment with Fidelity.

63. Heimbach agreed not to copy, disclose, or discuss in any manner any Confidential Information as defined in the Employee Agreement unless it was necessary for him to carry out his duties on behalf of Fidelity, and not to retain any copies of Fidelity Confidential Information when he left Fidelity.

64. Heimbach breached the non-solicitation, confidentiality, and non-disclosure provisions of his Employee Agreement by the conduct described above.

65. Heimbach continues to violate his contractual obligations, and will continue to violate those obligations in the future.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

66. As a consequence of the foregoing, Fidelity has suffered and will continue to suffer irreparable harm for which it lacks an adequate remedy at law and financial loss.

67. Unless Heimbach is enjoined from the foregoing conduct, Fidelity will be irreparably harmed by:

(a) Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Fidelity and its clients;

(b) Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

(c) Potential future economic loss, which is presently incalculable.

68. Thus, Fidelity is entitled to a temporary and/or preliminary injunctive relief.

**THIRD CLAIM FOR RELIEF**

**(Breach of Duty of Loyalty)**

69. Fidelity hereby realleges and incorporates by reference the allegations of paragraphs 1 through 68 of the Complaint, inclusive, as though set forth in full.

70. Heimbach, as an employee of Fidelity, had access to Fidelity's confidential and trade secret information, and was required to exercise the utmost good faith and loyalty in the performance of his duties during and after his employment by Fidelity, as required by his Employee Agreement and California common law.

71. Upon information and belief, Heimbach breached this duty of good faith and loyalty by misappropriating Fidelity trade secret information while still employed by Fidelity and subsequently using that information for the benefit of Fidelity's competitor and Heimbach's current employer, *i.e.*, LPL, while Heimbach was still employed by Fidelity and thereafter.

///

72. As a direct and proximate result of Heimbach's unlawful conduct, Fidelity has suffered and will continue to suffer irreparable harm for which it lacks an adequate remedy at law, as well as financial loss.

73. Fidelity is informed and believes, and on that basis alleges, that Heimbach's unlawful conduct will continue unless he is enjoined immediately by this Court.

74. Unless Heimbach is temporarily or preliminarily enjoined from the foregoing conduct, Fidelity will be irreparably harmed by:

(a) Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Fidelity and its clients;

(b) Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

(c) Potential future economic loss, which is presently incalculable.

75. Thus, Fidelity is entitled to a temporary and/or preliminary injunctive relief.

**FOURTH CLAIM FOR RELIEF**

**(Injunctive Relief)**

76. Fidelity hereby realleges and incorporates by reference the allegations of paragraphs 1 through 75 of the Complaint, inclusive, as though set forth in full.

77. In doing the acts described herein, Heimbach, has harmed Fidelity by, among other things, improperly garnering, retaining, disclosing and utilizing Fidelity's confidential and proprietary information and trade secrets, in violation of Heimbach's Employee Agreement and California law, to give Heimbach a competitive edge over Fidelity, attempting to poach Fidelity's customer accounts, and diminishing Fidelity's reputation and goodwill.

78. Unless Heimbach is temporarily or preliminarily enjoined from the foregoing conduct, Fidelity will be irreparably harmed by:

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

(a) Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Fidelity and its clients;

(b) Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

(c) Potential future economic loss, which is presently incalculable.

79. Thus, Fidelity is entitled to a temporary and/or preliminary injunctive relief.

## BOND

If the Court requires it, Fidelity is willing to post a bond or cash in lieu of bond in the appropriate amount upon entry of the temporary restraining order or preliminary injunction.

## CONCLUSION

WHEREFORE, for relief on each of its causes of action, Fidelity prays that this Court enter a temporary restraining order or preliminary injunction in favor of Fidelity against Heimbach to enjoin Heimbach, pending arbitration before the Financial Industry Regulatory Authority or further Order of this Court, from committing the following acts:

(a) soliciting, whether directly or indirectly, and whether alone or in concert with others, any business from any Fidelity customer whom Heimbach served or whose name became known to Heimbach while in the employ of Fidelity, including, without limitation, all customers Heimbach learned of through his employment with Fidelity;

(b) using, disclosing, transmitting and continuing to possess for any purpose, including solicitation of customers, the information contained in the records of Fidelity, including, but not limited to, the names, addresses, and confidential financial and account information of the customers Heimbach learned of through his employment with Fidelity.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Additionally, under each of its causes of action, Fidelity requests that the Court order:

(c) Heimbach, and anyone acting in concert with him, including any agent, employee, officer or representative of Heimbach's new employer, to return to Fidelity any and all records, documents and/or information pertaining to Fidelity customers, whether in electronic, handwritten or any other form within five (5) days of entry of this order, including any and all copies. This requirement includes all records or documents, in any form, created by Heimbach, or anyone acting in concert with them, based on documents or information that was received or removed from Fidelity by Heimbach.

(d) Heimbach to file a declaration attesting that he has returned to Fidelity all information subject to this Court's Order within seven (7) days from the entry of this Court's Order; and

(e) Fidelity and Heimbach, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4, to proceed toward an expedited arbitration hearing on the merits before a duly appointed panel of arbitrators pursuant to Rule 13804 of the FINRA Code of Arbitration Procedure. Fidelity reserves its right to seek recovery of damages and attorneys' fees in the expedited arbitration proceeding.

Dated: April 10, 2013

Respectfully submitted,

LOCKE LORD LLP

By: ______________________
Nina Huerta
Attorneys for Plaintiff
FIDELITY BROKERAGE SERVICES LLC

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

**EXHIBIT 1**

# EXHIBIT 1




News | Contacts | FAQ | About Policy

Search Policies: Enter Keyword(s) Go

Home Corporate Policies Policies by Organization Policies By Term Policies By Region

Tuesday, April 2, 2013

# Confidentiality Policy

## Policy

Information is an asset of tremendous value in the financial services industry. To maintain the integrity and confidentiality of Fidelity information and the privacy of individuals, employees are required to protect confidential information at all times and to refrain from inappropriately using confidential information or disclosing it to unauthorized persons.

Fidelity employees often have access to a wide range of confidential information. Confidential information consists of all information made known to the employee that is not generally known to the the public and has not been expressly authorized for public disclosure and that is or may be used in the business of any of the Fidelity companies. It includes but is not limited to:

- trade secrets;
- secret, confidential, private or proprietary information;
- computer passwords and program designs;
- proprietary computer software designs and hardware configurations;
- proprietary technology;
- new product and service ideas;
- business plans;
- marketing, financial, trading, research, pricing and sales data;
- customer, prospect, vendor or personnel lists;
- financial and other personal or private information regarding customers (including, but not limited to social security numbers);
- financial and other personal or private information regarding other employees (including, but not limited to social security numbers and compensation), if such information has been obtained either through accessing Fidelity's confidential personnel records or through the exercise of one's confidential job responsibilities;
- confidential information about other companies and their products;
- information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential" or "Fidelity Internal."

All information is imparted to employees in a relationship of confidence. This means that all employees must exercise a particularly high standard of care with regard to all confidential information. Specifically, each employee is responsible to:

- keep confidential information from possession or review by any authorized person;
- not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any confidential information unless it is: (a). necessary to carry out the employee's job and the employee has permission from the owner, (b). necessary for other employees or agents of Fidelity to carry out their duties and responsibilities, or (c) authorized in writing by Fidelity;
- not retain any copies, notes or excerpts (in any form) of confidential information upon

**Related Corporate Policy**

Information Protection Policy (SP21)

**Related Regional Policies**

Confidentiality of Information Policy (Fidelity Canada Policy)

Confidentiality of Information Policy (Hong Kong Regional Policy)

Confidentiality of Information Policy (FBS India Policy)

Confidentiality of Information Policy (Japan Regional Policy)

Confidentiality of Information Policy (UK Regional Policy)

**Need More Information**

Call HR Solutions:
800-835-5099 (Prompt 2)

- termination of employment;
- notify Fidelity of any inadvertent, unauthorized or negligent copying, reproduction, use, disclosure or discussion of any confidential information;
- not open, read or in any way access confidential information without authorization, and to make sure they know to whom they are speaking before giving out any information;
- not improperly disclose personal information;
- show care when private matters are discussed or private information is requested.

All Fidelity information requires specific classification, labeling, storage, handling, and disposal in accordance with the policies maintained by Enterprise Information Security. Please refer to the Information Protection Program Web site for more information.

Managers are responsible for understanding, communicating and enforcing Company policies. This does not, however, override or diminish an employee's individual responsibility to be aware of and adhere to this policy. Human Resources is available to provide guidance upon request.

Origin Date: 03-15-10
Revised Date: 03-13-13

Disclaimer: In addition to understanding and complying with the policy stated above, you must also know and comply with the general principles which apply to all Fidelity Corporate Policies. Please click here to review these principles.

EXHIBIT 2

# EXHIBIT 2

DocuSign Envelope ID: 608EE0A0-7751-4BE2-AF49-E0E98EC2AB55

EMPLOYEE AGREEMENT

Dean Helmbach ("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory and other obligations.

1. Confidential Information. To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customers, prospect, vendor and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

2. Systems Access. In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3. Company Property. Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4. Outside Business Activities. So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5. Ethics and Outside Brokerage Accounts. So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker/dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either of Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6. Non-solicitation. In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any

DocuSign Envelope ID: 608EE0A0-7751-4BE2-AF49-E0E96EC2AB55

manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7. Inventions and Use of Name or Likeness. Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8. Agreements with Others. Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9. At Will Employment. Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10. Miscellaneous. This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors and its assigns. This agreement is governed in accordance with Massachusetts law and is signed under seal.

**This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.**

1F0366C1CC604CB...

Dean Heimbach Jun-18-2010 | 13:30 PT 6/18/2010

DocuSigned by: Dean Heimbach

Employee — Date

Employee Corporate ID

Laurel A. Link 06/18/2010

Laurel A. Link
Fidelity Representative — Date



March 2008

Nina Huerta (SBN 229070)
nhuerta@lockelord.com
Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, California 90071

FOR OFFICE USE ONLY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC<br>PLAINTIFF(S)<br>v.<br>DEAN HEIMBACH<br>DEFENDANT(S). | CASE NUMBER<br>SACV13-0573 AG(ANx)<br><br>**SUMMONS** |

TO: DEFENDANT(S):

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ______ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Nina Huerta of Locke Lord LLP, whose address is 500 South Grand Avenue, Suite 2600, Los Angeles, California 90071. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated: APR 10 2013

Clerk, U.S. District Court

By: JULIE PRADO
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

FOR OFFICE USE ONLY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

**SACV13- 573 AG (ANx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[✓] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
Fidelity Brokerage Services LLC

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
Dean Heimbach

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Nina Huerta (SBN 229070)
Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, California 90071
AND
111 S. Wacker Drive
Chicago, Illinois 60606

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $** ________

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Plaintiff seeks a TRO and Preliminary Injunction in aid of a FINRA arbitration for trade secret misappropriation.

**VII. NATURE OF SUIT** (Place an X in one box only).

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/Etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Org.
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/Exchange
☒ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Info. Act
☐ 896 Arbitration
☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.)
☐ 153 Recovery of Overpayment of Vet. Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment

**REAL PROPERTY CONT.**
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpratice
☐ 365 Personal Injury-Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accomodations
☐ 445 American with Disabilities-Employment
☐ 446 American with Disabilities-Other
☐ 448 Education

**PRISONER PETITIONS**
**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee Conditions of Confinement

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405 (g))
☐ 864 SSID Title XVI
☐ 865 RSI (405 (g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY: Case Number: SACV13-0573

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [x] NO [ ] YES

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [x] NO [ ] YES

If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)
- [ ] A. Arise from the same or closely related transactions, happenings, or events; or
- [ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or
- [ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or
- [ ] D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| **County in this District:*** | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Massachusetts |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| **County in this District:*** | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| **County in this District:*** | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

***Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note**: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** [signature] DATE: 4/10/2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |