Nina Huerta (SBN 229070)
nhuerta@lockelord.com
Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Tel: (213) 485-1500
Fax: (213) 485-1200

Jennifer A. Kenedy (pro hac vice application pending)
jkenedy@lockelord.com
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 443-0700
Fax: (312) 443-0336

Attorneys for Plaintiff
FIDELITY BROKERAGE SERVICES LLC

(lodged proposed order)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC,<br><br>Plaintiff,<br><br>v.<br><br>DEAN HEIMBACH,<br><br>Defendant. | CASE NO. SACV13-0573 AG (ANx)<br><br>**FIDELITY BROKERAGE SERVICES LLC's *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER (WITHOUT SECURITY) AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65 AND LOCAL RULE 65-1**<br><br>[Memorandum of Points and Authorities, Declarations of Linda Park, Buddy Maclean, Eric Bronner, Michael MacDonald, and Leslie Blickenstaff, *Ex Parte* Application to File Under Seal, *Ex Parte* Application for Leave to File Oversize Brief, and [Proposed] Orders Filed Concurrently Herewith]<br><br>Complaint Filed: April 10, 2013 |

ORIGINAL

1
FIDELITY'S *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65 and Local Rules 7-19 and 65-1, Plaintiff Fidelity Brokerage Services LLC ("Fidelity"), by its undersigned counsel, hereby respectfully applies, *ex parte*, to this Court for a 20 day temporary restraining order ("TRO") (without security) and order to show cause ("OSC") Re: Preliminary Injunction (collectively, the "Application"), in accordance with Fidelity's [Proposed] Order submitted concurrently herewith. Fidelity is separately filing a comprehensive Memorandum of Points and Authorities, but provides a brief summary of the conduct it seeks to enjoin in this Motion.

Fidelity seeks an immediate TRO (without security) and OSC Re: Preliminary Injunction against Defendant Dean Heimbach ("Heimbach") to stop his ongoing misappropriation of Fidelity's trade secrets, and to stop Heimbach from using that information to improperly solicit Fidelity customers in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.* ("UTSA"), and the Non-Solicitation and Non-Disclosure provisions of Heimbach's Employee Agreement with Fidelity. *See Merrill Lynch v. Chung*, No. CV 01-00659, 2001 WL 283083, at *4 (C.D. Cal. Feb. 2, 2001) (entering temporary injunctive relief in favor of Merrill Lynch to prevent misappropriation of customer list and solicitation).

On April 10, 2013, concurrently with the filing of this Application, Fidelity filed a Complaint with the Court.

On April 10, 2013, Fidelity also concurrently filed a Statement of Claim with the Financial Industry Regulatory Authority ("FINRA") seeking an expedited arbitration under the FINRA Code of Arbitration Procedure. Under FINRA Rule 13804, Fidelity is ***required*** to seek and ***obtain*** immediate injunctive relief in a court of competent jurisdiction ***before*** an expedited FINRA arbitration is permitted to proceed. After obtaining the temporary restraining order from this Court, Fidelity will proceed to an expedited arbitration within 15 days of the court order on its request for permanent injunctive relief. Without the necessary injunctive relief, Fidelity would

have to proceed before FINRA on a standard track arbitration, which would take a year or more. Accordingly, a temporary restraining order is required in order for Fidelity to have this matter heard by FINRA on an expedited basis.

As stated in Fidelity's Complaint, the Memorandum of Points and Authorities in Support of this Application and in the supporting Declarations of Linda Park, Buddy Maclean, Eric Bonner, Michael MacDonald, and Leslie Blickenstaff, which are each incorporated herein by reference, since before and after his resignation from Fidelity on December 13, 2012, Heimbach, a former Account Executive who serviced hundreds of customers at Fidelity, has misappropriated, used, and continues to use, Fidelity's property, trade secrets, and confidential customer data and information to solicit Fidelity customers on behalf of his new employer, Capstone Affluent Strategies ("Capstone"), which offers brokerage services through LPL Financial, LLC ("LPL"). Both Capstone and LPL are competitors of Fidelity in the financial services industry.

Soon after Heimbach resigned from Fidelity, Fidelity learned that Heimbach was contacting Fidelity customers on behalf of his new employer, LPL. Upon learning of these customer reports, in an effort to resolve the issue short of litigation, Fidelity conferred in good faith with Heimbach and with LPL counsel and formally requested the return of all confidential and trade secret information in his possession. Heimbach returned a list of certain customers' confidential and trade secret information, and signed an affidavit indicating that he did not have any additional Fidelity customer information in his possession and that he would abide by his obligations to Fidelity going forward. Given the representations in the sworn affidavit and the return of the customer list, Fidelity considered the matter closed.

On March 18, 2013, Fidelity learned to its surprise and alarm that on March 13, 2013 a customer reported that Heimbach had recently contacted him in an attempt to get him to transfer his business to Heimbach's new firm. The customer reported that Heimbach showed up at his house with forms already filled out with the customer's personal and Fidelity account details. The customer was so concerned that Heimbach

had his personal and account information when he no longer worked for Fidelity that he called Fidelity to report the incident. Accordingly, Fidelity is concerned that Heimbach was not truthful in his affidavit and has not returned and/or deleted all Fidelity customer information he removed from Fidelity, including highly sensitive account information. Fidelity has done what it could to reasonably resolve this issue short of litigation but now requires the this Court's assistance in assuring that all customer information is returned.

Fidelity now seeks a TRO requiring Heimbach to return to Fidelity any and all records and/or documents in any form, received or removed from Fidelity by Heimbach, containing information pertaining to customers Heimbach served or whose name became known to Heimbach while in the employ of Fidelity, including, but not limited to, any customer list or documents, replicated or "recreated" by Heimbach by memory or otherwise, using Fidelity's confidential and trade secret information concerning Fidelity's customers. In addition to seeking the return of Fidelity confidential and trade secret customer information in Heimbach's possession, Fidelity further seeks a TRO prohibiting Heimbach from directly or indirectly soliciting Fidelity's customers, as required by Heimbach's contract with Fidelity. The requested relief, including the TRO and OSC, are necessary to end Heimbach's unlawful activities, which include misappropriation of Fidelity's trade secrets, breach of contract and breach of the duty of loyalty.

Heimbach prepared to engage in, is engaging in, and plans to continue to engage in the following acts:

    (a) removal of Fidelity trade secret customer information and misappropriation of the trade secret information contained in confidential Fidelity business records, including specifically the names, addresses, email addresses, phone numbers, account information, and/or other confidential information of Fidelity customers;

    (b) transmitting verbally, in writing or in any other manner for the use of his new employer, LPL, customers' contact and financial information contained in Fidelity's records;

    (c) soliciting and preparing to solicit Fidelity's customers to terminate their relationship with Fidelity and transfer their accounts to LPL; and/or

    (d) other such acts which violate the Trade Secrets Act and which are contrary to the terms, conditions, and provisions of the Employee Agreement.

Fidelity has no adequate remedy at law. Unless Heimbach is preliminarily enjoined from the foregoing conduct, Fidelity will be irreparably harmed by:

    (a) disclosure of trade secret customer information, and other confidential information that is solely the property of Fidelity and its customers;

    (b) loss of confidentiality of clients' information and/or records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

    (c) potential economic loss, which is presently incalculable.

The threat of irreparable injury is not only imminent but actual and ongoing. As set forth in the Memorandum of Points and Authorities, Heimbach has already used Fidelity's trade secret customer information to solicit Fidelity customers in an effort to convince them to transfer management of their accounts from Fidelity to Heimbach at LPL and at least once customer was upset enough that Heimbach had his confidential information that he reported it to Fidelity. Customers should be able to trust that Fidelity will protect their confidential personal and account information.

California courts routinely grant injunctions barring employees from using their former employers' confidential customer information to solicit the customers of their former employers. *Chung*, 2001 WL 283083 at *4 (granting TRO to protect customer lists); *Merrill Lynch v. Garcia*, 127 F. Supp. 2d 1305, 1306 (C.D. Cal. 2000) (granting preliminary injunction to protect customer list); *Gable-Leigh, Inc. v. N. Am. Miss*, No.

CV 01-01019, 2001 WL 521695, at *20 (C.D. Cal. Apr. 13, 2001) (same); *ReadyLink Healthcare v. Cotton*, 126 Cal.App.4th 1006, 1018 (2005) (affirming preliminary injunction protecting customer list where plaintiff "went to great expense to compile the data"); *Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514, 1522 (1997) (affirming permanent injunction protecting customer list where "the patronage of such customers was secured through the expenditure of considerable time and money"); *Klamath-Orleans Lumber, Inc. v. Miller*, 87 Cal.App.3d 458, 464 (1978) (affirming permanent injunction protecting customer list, noting that "an employee . . . should not be allowed to exploit information which his employer compiled at great expense and which represents a valuable business asset").

Additionally, on each occasion Fidelity has sought relief in United States District Courts in California under substantially similar circumstances, the courts have granted Fidelity's request for a temporary restraining order in order to protect Fidelity's confidential and trade secret customer information and to stop ongoing solicitation of its customers. *Fidelity Brokerage Serv. LLC v. McNamara*, No. 11 CV 1092 MMA (RBB), 2011 WL 2117546 (S.D. Cal. May 27, 2011); *Fidelity Brokerage Serv. v. Parker*, Case No. 04-cv-1027-IEG(LSP) (S.D. Cal. 2004); *Fidelity Brokerage Serv. LLC v. Sanchez*, Case No. CV08-03863 ABC PJWx (C.D. Cal. 2008); *Fidelity Brokerage Serv. v. Vance*, Case No. SACV07-1230 DOC (C.D. Cal. 2007). (*See* Appendix of Unpublished or Electronically-Published Authorities filed concurrently herewith.)

The UTSA expressly provides for injunctive relief for either the actual or threatened misappropriation of trade secrets. Cal. Civ. Code § 3426.2(a), (c). Additionally, Fidelity's customer information, including the identity of Fidelity customers, is also required to be kept confidential under the Gramm-Leach-Bliley Act and its implementing regulations. The statute declares, "[i]t is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of

those customers' nonpublic personal information." 15 U.S.C. § 6801(a). The implementing regulation, known as Regulation S-P, prohibits the disclosure of so-called "nonpublic personal information" to third parties without consent. 17 C.F.R. § 248.10. Nonpublic personal information is defined to include customer lists from financial institutions, even if those lists contain only names of Fidelity customers because the identity of an individual as being a customer of a particular financial institution is specifically protected by the federal regulations. 17 C.F.R. § 248.3(t)(1); 17 C.F.R. § 248.3(u)(2)(i)(D). Additionally, account information is protected under Regulation S-P. 17 C.F.R. § 248.3(t)(1); 17 C.F.R. § 248.3(u)(1).

The narrow relief sought by Fidelity is set forth in the [Proposed] Order Granting Temporary Restraining Order (Without Security) And Order To Show Cause Re Preliminary Injunction Pursuant To Federal Rule Of Civil Procedure 65 and Local Rule 65-1, submitted herewith. Any delay in granting Fidelity the relief requested herein would result in the illegal and unnecessary infliction of irreparable harm and the destruction of the *status quo* pending arbitration.

Notice was given to Heimbach of this Application on April 9, 2013. To Fidelity's knowledge, Heimbach is not currently represented by counsel.

This Application is based on the Memorandum of Points and Authorities in Support of this Application, the Declarations of Linda Park, Buddy Maclean, Eric Bonner, Michael MacDonald, and Leslie Blickenstaff, the [Proposed] Order Granting Temporary Restraining Order (Without Security) And Order To Show Cause Re Preliminary Injunction Pursuant To Federal Rule Of Civil Procedure 65 and Local Rules 65-1 and 7-19, and on such other evidence and argument as the Court may consider.

///

///

///

///

Dated: April 10, 2013

Respectfully submitted,

LOCKE LORD LLP

By: _____
Nina Huerta
Attorney for Plaintiff
FIDELITY BROKERAGE SERVICES LLC