1   Nina Huerta (SBN 229070)
    nhuerta@lockelord.com
2   Locke Lord LLP
    300 South Grand, Suite 2600
3   Los Angeles, California 90071
    Phone: (213) 4851500
4   Fax: (213) 485-1200

5   Jennifer A. Kenedy (*pro hac vice application pending*)
    jkenedy@lockelord.com
6   LOCKE LORD LLP
    111 South Wacker Drive
7   Chicago, IL  60606-4410
    Phone:  (312) 443-0700
8   Fax: (312) 443-0336

9   Attorneys for Plaintiff
    FIDELITY BROKERAGE SERVICES LLC

10

FILED
CLERK, U.S. DISTRICT COURT

APR 1 0 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC,<br><br>Plaintiff,<br><br>v.<br><br>DEAN HEIMBACH<br>Defendant. | CASE NO. **SACV13-0573 AG (ANx)**<br><br>**DECLARATION OF LESLIE BLICKENSTAFF IN SUPPORT OF FIDELITY BROKERAGE SERVICES LLC's *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER (WITHOUT SECURITY) AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65 AND LOCAL RULE 65-1**<br><br>[*Ex Parte* Application, Memorandum of Points and Authorities, [Proposed] Order, Declarations of Eric Bronner, Buddy Maclean, Linda Park, Michael MacDonald and Nina Huerta, Notice and *Ex Parte* Request to File Under Seal and [Proposed] Order Filed Concurrently Herewith]<br><br>Date:  *Ex Parte*<br>Time:  *Ex parte*<br>Place:  TBD<br><br>Complaint Filed: , 2013<br>Trial Date: Not Set |

ORIGINAL

REDACTED

LOCKE LORD LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

## DECLARATION OF LESLIE BLICKENSTAFF

I, LESLIE BLICKENSTAFF solemnly affirm as follows:

1.    I am in-house legal Counsel for FMR LLC. I have personal knowledge of the facts related to this action, as well as the statements made herein and, if called upon to testify, I could and would testify competently thereto. I make this declaration on behalf of Plaintiff Fidelity Brokerage Services LLC ("Fidelity") in support of its *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction.

2.    In my capacity as Counsel for FMR LLC, I have possession, custody, supervision and control of Fidelity's records and documents relating to Fidelity, Fidelity's dealings with Defendant Dean Heimbach ("Heimbach") and his new employer, LPL Financial, LLC ("LPL"), and this action. I state that the records and documents referred to in this Declaration constitute writings taken, made or received in the ordinary course of business of Fidelity at or near the time of the act, condition or event to which they relate, by persons employed by Fidelity who have a business duty to Fidelity to accurately and completely take, make, receive and maintain such records and documents.

3.    Fidelity hires Account Executives to service its customers' accounts. At the time of his resignation on Thursday, December 13, 2012, Heimbach was an Account Executive at Fidelity's office in Brea, California.

4.    Soon after Heimbach resigned from Fidelity, I learned that customers of Fidelity were being contacted by Heimbach regarding his new position with LPL. These customers reported that they received letters from Heimbach.

5.    The only way Heimbach could have had knowledge of these customers and their contact information is by using confidential and trade secret information that he misappropriated from Fidelity during his employment. The reports from Fidelity's customers, therefore, strongly suggested that Heimbach had in his possession and was

1   using on behalf of his new employer, LPL, Fidelity's confidential and trade secret

2   customer information.

3        6.     Upon learning of these customer reports, I became concerned that

4   Heimbach was using Fidelity's confidential and trade secret customer information in

5   an attempt to solicit Fidelity customers to transfer their business from Fidelity to LPL,

6   which directly competes with Fidelity in offering investment planning, wealth

7   management and other financial services to customers.

8        7.     Thus, on January 4, 2013, I sent a letter to Heimbach. In this letter, I

9   indicated that Fidelity had reason to believe Heimbach was contacting and soliciting

10   Fidelity customers, and asked that he cease and desist from this conduct immediately.

11   I also reminded him that, pursuant to his Employee Agreement, he was and is not

12   permitted to use or disclose Fidelity customer information, including names,

13   addresses, email address, telephone numbers and account information (which would

14   include as portfolio worth, asset distribution, risk tolerance, and investment strategy

15   and goals). In addition, I formally requested that Heimbach return to Fidelity all such

16   confidential and trade secret information in his possession. I also asked him to review

17   and sign an affidavit that stated that he had returned to me and/or did not have any

18   Fidelity customer information. This letter was copied to Peter Gillies, Associate

19   Counsel at LPL. Copies of the employee agreement Heimbach signed with Fidelity

20   and the proposed affidavit were enclosed with the letter. A true and correct copy of

21   my January 4, 2013 letter to Heimbach is attached hereto as Exhibit 1 and is

22   incorporated by reference herein as though fully set forth.

23        8.     On January 12 and on January 19, Fidelity sent Heimbach letters

24   reminding Heimbach of his ongoing obligations to Fidelity, including his obligation

25   not to solicit Fidelity customers for one year and to not use or disclose any Fidelity

26   Confidential Information, including information about Fidelity customers. These

27   letters included a copy of Heimbach's Employee Agreement with Fidelity. True and

28   correct copies of these letters are attached hereto as Exhibit 2 and 3 hereto,

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Declaration of Leslie Blickenstaff

1  respectively, and are incorporated by reference herein as though fully set forth.

2       9.     After sending the January 4, 2013 cease and desist letter, I asked
3  Fidelity's outside counsel to speak to Mr. Gillies about our concerns that Heimbach
4  was soliciting customers and using Fidelity confidential customer information to
5  contact Fidelity customers on behalf of LPL.  We informed Mr. Gillies that Fidelity
6  wanted Heimbach to sign an affidavit verifying that (1) Heimbach in fact had no such
7  Fidelity confidential or trade secret information in his possession in any form, and (2)
8  Heimbach had not provided any such information to any third party, including LPL. In
9  response, Mr. Gillies informed us that Heimbach had "memorized names" of the
10 customers he worked with while at Fidelity, looked up their contact information on
11 the internet, and then used that information to send a letter to those customers
12 announcing his new job and contact information at LPL.  Mr. Gillies told us that
13 Heimbach only sent a written announcement of his new employment and was not
14 soliciting Fidelity customers.  Given that Heimbach had already announced his new
15 employment, Mr. Gillies agreed to have Heimbach sign a revised affidavit which
16 indicated he was returning a copy of all customer information in his possession,
17 deleting any remaining copies and that he would honor his contractual obligations to
18 Fidelity.

19      10.    On February 5, 2013 I received the affidavit signed by Heimbach  on
20 January 24, 2013.  A true and correct copy of the signed affidavit is attached hereto as
21 Exhibit 4 and is incorporated by reference herein as though fully set forth. In
22 connection with signing the affidavit, Heimbach returned to me a list of 89 customers,
23 including their first and last names and addresses (including street, city, state and zip
24 code).  In the sworn affidavit, Heimbach attested that (1) he was returning to me a
25 copy of all Fidelity customer information he had in his possession and that that
26 information was attached to the affidavit; and (2) he would abide by his contractual
27 obligations to Fidelity.  Given the representations in the sworn affidavit and the return
28 of the customer list, Fidelity considered the matter closed.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

11.     Then, to my surprise and alarm, on March 18, 2013, I learned that on March 13, 2013 a customer had called an internal telephone number used by employees who wish to report concerns anonymously (the "Chairman's Line") to express a concern about Heimbach.     Specifically, the customer reported that Heimbach had recently contacted the customer in an attempt to get him to take his business to Heimbach's new firm.  The customer agreed to have Heimbach come to his house to discuss possibly switching firms, but the customer was concerned because when Heimbach showed up at his house he had forms already filled out with the customer's personal and Fidelity account details.

12.     This report concerned me for two reasons. First, this report contradicted the representations Heimbach and Mr. Gillies made that Heimbach had not solicited customers, but had only sent an announcement about his new position. Second, this report contradicted Heimbach's sworn affidavit, which indicated he had returned all Fidelity information to me.  The only information Heimbach returned was the list of customers and their addresses, not customer account information. This report strongly suggested that Heimbach has customer account information, and lied about it in his affidavit. At this point, Fidelity cannot trust that Heimbach was honest in his affidavit or was honest with his employer or Fidelity about his conduct and the information he took from Fidelity, and has no choice but to seek court intervention to stop the behavior and have the information returned.

13.     Given this new report, I began questioning the representations Heimbach had made to us.  I reviewed the customer list he returned again and was skeptical that Heimbach could memorize 89 first and last names and the cities in which they lived, so I looked at the list and tried to find some of the individuals using www.whitepages.com with only their first and last names, and the city in which they live. Based on a brief search, it appears there are three entries for "F██ C██" in Cerritos, California, two entries for "G██ F██", in Anaheim, California (neither of which have the address Heimbach listed on his list), and two entries for "S██

J███████" in Covina, California (neither of which have the address Heimbach listed on his list). Without additional information about these individuals, whether in written form or in Heimbach's memory, it is impossible to identify which of them is a Fidelity customer. This suggested to me that Heimbach may have misappropriated more customer information from Fidelity than he had represented. True and correct copies of the www.whitepages.com search results for the above searches are attached hereto as Exhibit 5 and is incorporated by reference herein as though fully set forth.

14. In short, Fidelity has only recently learned that Heimbach has solicited Fidelity's customers to transfer their business from Fidelity to LPL. Additionally, even though Heimbach signed an affidavit which led Fidelity to believe the matter was resolved, for the reasons stated above, Fidelity is concerned that Heimbach was not truthful in his affidavit and has not returned and/or deleted all Fidelity customer information he removed from Fidelity, including highly sensitive account information.

15. All customer data which Heimbach has used and continues to use is derived solely from Fidelity's confidential customer information and trade secrets, to which Heimbach was given access solely as part of his employment with Fidelity. This information belongs exclusively to Fidelity, constitutes Fidelity's protected trade secrets, and, to the extent he has not done so, all documents containing this information created by Heimbach must be returned to Fidelity and all electronic or other versions deleted.

16. Heimbach's conduct has irreparably harmed Fidelity and will continue to irreparably harm Fidelity if not stopped immediately. Indeed, the impact that Heimbach's conduct has and will continue to have on Fidelity's relationships with its customers, such as loss of good will, future business or referrals, as well as loss of trust and confidence in securing inherently-private information, cannot be calculated with precision and cannot be adequately compensated. Fidelity customers have an expectation that their confidential contact and financial information, such as their net worth, risk tolerances, investment goals, and preferences, will be protected. Thus,

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

customers understandably are concerned when former Fidelity employees, such as Heimbach, have access to their information and are using it to solicit their business at a new and different brokerage institution.

17. Faced with Heimbach's intentional misappropriation of Fidelity's confidential customer information, Heimbach's demonstrably false reports in response to Fidelity's attempts to work with Heimbach and LPL to resolve these issues, and the resultant irreparable harm to Fidelity, Fidelity is left with no alternative but to seek immediate redress from this Court and the Financial Industry Regulatory Authority ("FINRA").

18. Concurrently with the filing of the Complaint in the within action, Fidelity also is filing a Statement of Claims with FINRA seeking binding arbitration of this dispute pursuant to Rule 13804(a)(2). Although the merits of this case will be resolved in arbitration before FINRA, Fidelity must first obtain a temporary restraining order from this Court in order to have an expedited hearing on the merits before FINRA for a permanent injunction. In the event a temporary restraining order is granted by this Court, an expedited arbitration will be scheduled with FINRA within 15 days of the entry of the order. If no temporary restraining order is issued, however, Fidelity must obtain a preliminary injunction from the Court, as the case will not be heard by FINRA on an expedited basis and, instead, will be assigned to standard-track arbitration, a course of action that would delay a hearing on the merits for a year or more. Temporary and/or preliminary injunctive relief, therefore, is required to preserve the status quo until a hearing before FINRA can take place.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the
2    foregoing is true and correct and that this declaration was executed this 4th day of
3    April 2013 at Boston, Massachusetts.

4                              FURTHER DECLARANT SAYETH NAUGHT

5

6

7    _____
8              Leslie Blickenstaff, Esq.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

# EXHIBIT 1

Exhibit _1_, Page _9_

Leslie S. Blickenstaff
Attorney
FMR LLC Legal Department

82 Devonshire Street F6B
Boston, MA 02109
617-563-9738

 **Fidelity**

January 4, 2013

**Via Overnight Delivery**

Dean Heimbach
15 Pallazo
Laguna Niguel, CA 92677

Dear Dean:

It has come to our attention that after you left your position as an Investor Center Account Executive in Fidelity Brokerage Services, LLC in Brea Orange County, CA, you took a position with Capstone Affluent Strategies, which is affiliated with LPL Financial LLC. Fidelity has reason to believe that you may be contacting Fidelity customers for the purpose of soliciting their business. The Employee Agreement ("the Agreement") you signed while in Fidelity's employ (copy attached) prohibits such solicitation of Fidelity's customers. This letter constitutes a formal request that any such activity cease immediately.

Furthermore, all of Fidelity's customer and prospect lists and all information concerning Fidelity's customers, including names, addresses, telephone numbers and account information, are confidential and proprietary. Pursuant to the Agreement and general principles of law, you are obligated to maintain all of Fidelity's confidential and proprietary information in strictest confidence. This includes information that you have in your memory. You may not disclose this information or make any use of it for yourself or for others, including LPL Financial or future employers.

This letter also constitutes a formal request that you return to Fidelity any Company Property, including but not limited to any and all records, electronic data, computer files, or documents pertaining to Fidelity clients or individuals or entities you became aware of through your employment at Fidelity, including but not limited to names, phone numbers, addresses and/or e-mail addresses, whether in original, copied, computerized, handwritten, or any other form. To the extent that these exist in electronic form, after returning a copy to me you should securely and permanently delete any electronic data that contain or constitute Company Property from all computer systems to which you have access. Please verify that you have in fact done so and confirm that you have no other Company Property in your possession, custody or control by signing the attached form and returning it to me by Monday, January 14, 2013.

Naturally, we assume you intend to honor your obligations to Fidelity, and I trust that this reminder will prevent an oversight on your part. In the event that you do not honor your obligations under the Agreement or otherwise, Fidelity will take legal action to preserve its rights under the law, which may include seeking monetary damages and injunctive relief.

I am sending a copy of this letter to counsel for LPL Financial, who, I assume, will want to take steps to ensure that you are not put in a situation that would require or allow you to breach the terms of the Agreement or your other obligations to Fidelity.

If you have any questions, please let me know.

Very truly yours,

*Leslie S. Blickenstaff* (rak)

Leslie S. Blickenstaff

Enclosure
cc: Peter Gillies (via email)

Exhibit _1_, Page _10_

DocuSign Envelope ID: 608EE0A0-7751-4BE2-AF49-E0E96EC2AB55

## EMPLOYEE AGREEMENT

Dean Heimbach _____ ("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory and other obligations.

1.     Confidential Information.  To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies.  Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee.  It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customers, prospect, vendor and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies.  Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment.  Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

2.     Systems Access.  In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3.     Company Property.  Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4.     Outside Business Activities.  So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures.  Approval for outside activities may be withdrawn at any time.

5.     Ethics and Outside Brokerage Accounts.  So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures or guidelines regarding Fidelity's standards for the proper conduct of business.  If Employee is an employee of or associated with a registered broker/dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards and guidelines of the Fidelity Companies applicable to those in regulated businesses.  Neither Employee nor Employee's spouse will maintain any brokerage account that either of Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6.     Non-solicitation.  In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies.  During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any

March 2008

Employee's Initials

Exhibit __/__ , Page __//__

DocuSign Envelope ID: 608EE0A0-7751-4BE2-AF49-E0E96EC2AB55

manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7.      Inventions and Use of Name or Likeness.  Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment.  All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire and all right, title, and interest in the Materials shall be owned by the Fidelity Companies.  To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies.  In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the inventions in any and all countries.  These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work.  These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870.  In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8.      Agreements with Others.  Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement.  Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others.  Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies.  Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9.      At Will Employment.  Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10.      Miscellaneous.  This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds or the particular Fidelity Company that employs Employee.  Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works.  Employee will disclose the existence and terms of this Agreement to any future employer of Employee.  Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies.  As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part.  Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them.  Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors and its assigns.  This agreement is governed in accordance with Massachusetts law and is signed under seal.

This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.

Jun-18-2010 | 13:30 PT        6/18/2010

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Employee Corporate ID                              Date

*Laurel A. Link*

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾        06/18/2010
Laurel A. Link                                          ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Fidelity Representative                             Date

March 2008

2

Exhibit __1__, Page __12__

## AFFIDAVIT OF DEAN HEIMBACH

DEAN HEIMBACH, being first duly sworn, states as follows:

1.      My name is Dean Heimbach and I am over the age of 18.  Except where otherwise indicated, the statements contained herein are based on my personal knowledge.  I was employed by Fidelity Brokerage Services LLC ("Fidelity") as an Investor Center Account Executive in Brea Orange County, California until I resigned my employment effective, December 13, 2012. I am now employed by Capstone Affluent Strategies, which is affiliated with LPL Financial ("LPL").

2.      I hereby state that I have returned to Leslie Blickenstaff at Fidelity, and therefore do not have in my possession, custody or control, customer lists (including any Christmas or holiday card lists), records, electronic data, computer files, or documents pertaining to Fidelity customers or individuals or entities I became aware of through my employment at Fidelity, including but not limited to names, phone numbers, addresses and/or e-mail addresses, account numbers and/or financial and/or account information of Fidelity customers whether in original, copied, computerized, handwritten, or any other form.  This includes any documents created either during or after I left my employment with Fidelity that contain information pertaining to Fidelity clients that I worked with or Fidelity clients or individuals or entities I became aware of through my employment at Fidelity, including information created from my memory.  This includes information kept at my place of employment or personally. For electronically maintained information, after printing a copy to return, I have secured the deletion of that information from all computer files or other electronic equipment, including, cellular telephones, personal data assistants, DVDs, CD-ROMs, USB storage devices, floppy disks, Zip drives, flash drives memory cards or other electronic devices within my employer's custody or control.

3.      I have not given any of the above documents or information or copies thereof to any other person or entity, including LPL or Capstone Affluent Strategies.

Exhibit _1_ , Page _13_

Pursuant to 28 USC §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____

_____
Dean Heimbach

Sworn to and subscribed before me
this _____ day of _____, 2013

_____
Notary Public

Exhibit _1_ , Page _14_

# EXHIBIT 2

Exhibit _2_, Page _15_

Dean Helmbach
15 Pallazo
Laguna Niguel, CA 92677

54 48 -006975 -022013 136 022013 1056 EST

**Fidelity**
INVESTMENTS

January 12, 2013

Dean Heimbach
15 Pallazo
Laguna Niguel, CA 92677

Dear Dean:

I am writing to confirm certain important information associated with your departure from Fidelity, effective January 01, 2013.

**Benefits:** Under separate cover, you will receive information about how to continue your life, health and dental insurance coverage. If you have any questions regarding continued coverage, please feel free to contact Fidelity HR Solutions at (800) 835-5099, Option 1. If you are a Profit Sharing Plan participant, Fidelity will also send you information regarding your options with respect to this program. If you have a 401(k) loan, you will receive information under separate cover about options for repayment of your outstanding balance. Please contact Fidelity HR Solutions at (800) 835-5099, Option 1 with any questions about Profit Sharing Plan participation or 401(k) loans.

**Final Paycheck:** If you have not received your final paycheck, which will include any accrued but unused vacation/elective holiday time remaining as of your separation date, please contact Fidelity HR Solutions at (800) 835-5099, Option 1 with any questions.

**Employment Verifications:** Fidelity's policy is to verify dates of employment, job title, employment status and salary information through an employment verification summary and an earnings information summary. To authorize a third party to obtain a standard employment verification summary or an earnings information summary, follow one of these two options; 1) Go directly to The Work® Number at http://theworknumber.com or 2) If you do not have internet access call HR Solutions at 800-835-5099, Prompt 1.

**Delivery of W-2:** If you relocate within the calendar year, please notify Fidelity HR Solutions at (800) 835-5099, Option 1 to insure proper delivery of your current year Form W-2.

**Company Property:** We expect that you returned all Company property on your last day of work, including Confidential Information (see below), files, documents, computer and electronic communications equipment, your identification badge, company credit cards, company telephone cards, building or equipment keys, and any other equipment. If you have subscribed to any Internet on-line services, such as newsletters or other updates, you are responsible for canceling your subscriptions. If you discover any Company property in your possession in the future, please promptly contact Fidelity HR Solutions at (800) 835-5099, Option 2 for further instructions.

**Confidential Information:** While you were employed by Fidelity, you became aware of confidential information regarding Fidelity and its affiliates. Confidential Information consists of all information pertaining to the business of Fidelity or any of its affiliates that was not generally known to the public at the time made known to you. It includes but is not limited to trade secrets; secret, confidential and proprietary information; information protected

Exhibit _2_, Page _17_

by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing and marketing plans; customer, prospect, vendor and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and all information expressly designated as "Proprietary," "Fidelity Confidential," "Fidelity Highly Confidential," "Fidelity Restricted," or "Fidelity Internal Use Only". If you kept any confidential information belonging to Fidelity at the conclusion of your employment, please return it immediately. You may not use or disclose any confidential information belonging to Fidelity and the confidentiality provisions of the Employee Agreement you signed when you were hired continue to apply. I have attached a copy of your Employee Agreement. Please note you are obligated to bring this agreement to the attention of any future employer.

<u>Inventions</u>: Please be reminded that inventions that you made or conceived during your employment with Fidelity are Fidelity's exclusive property to the extent that any such ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "inventions"), whether or not patentable or copyrightable and whether conceived of solely or jointly, (i) were along the lines of the business or work of any of the Fidelity companies; (ii) resulted from or were suggested by any work which you did for the Fidelity companies; (iii) were made or conceived using equipment or other materials belonging to Fidelity; or (iv) were made or conceived during regular hours of work. You may not pursue any of these inventions on your own behalf or on behalf of any new employer without prior written permission from Fidelity. In addition, Fidelity may call upon you in the future for assistance in obtaining, maintaining, or enforcing patents, copyrights, trademarks, or other legal protection in connection with inventions.

<u>Non-Solicitation of Customers and Employees</u>: Please be reminded that for a period of one year following your departure, you may not directly or indirectly hire or solicit any Fidelity employee to leave his/her employment. For this same period of time, you may not directly or indirectly solicit any customer to cease any business relationship with Fidelity, or do certain types of business with customers with whom you had personal contact during your employment. The specific terms of your obligations with respect to non-solicitation are set forth in the Employee Agreement you signed upon hire (copy attached).

We wish you success in your future career endeavors. Please feel free to contact Fidelity HR Solutions at (800) 835-5099 if you have any questions or concerns about this information.

Sincerely,
Fidelity HR Solutions

Attachments:
    Employee Agreement

a486744

DocuSign Envelope ID: 608EE0A0-7751-4BE2-AF49-E0E98EC2AB55

## EMPLOYEE AGREEMENT

Dean Helmbach _____ ("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory and other obligations.

1.  Confidential Information.  To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customers, prospect, vendor and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

2.  Systems Access.  In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3.  Company Property.  Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4.  Outside Business Activities.  So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5.  Ethics and Outside Brokerage Accounts.  So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures or guidelines regarding Fidelity's standards for the proper conduct of business.  If Employee is an employee of or associated with a registered broker/dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either of Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6.  Non-solicitation.  In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any

March 2008

Employee's Initials: ____

DocuSign Envelope ID: 608EE0A0-7761-4BE2-AF49-E0E96EC2AB55

manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7.      Inventions and Use of Name or Likeness.  Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire and all right, title, and interest in the Materials shall be owned by the Fidelity Companies.  To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies.  In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries.  These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work.  These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870.  In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8.      Agreements with Others.  Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement.  Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others.  Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies.  Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9.      At Will Employment.  Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10.     Miscellaneous.  This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds or the particular Fidelity Company that employs Employee.  Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works.  Employee will disclose the existence and terms of this Agreement to any future employer of Employee.  Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies.  As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part.  Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them.  Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available.  This agreement will be for the benefit of the Fidelity Companies, its successors and its assigns.  This agreement is governed in accordance with Massachusetts law and is signed under seal.

This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies.  Employee and the Fidelity Companies hereby agree to adhere to it.

_Dean Heimbach_                                 Jun-18-2010  |  13:30 PT
DocuSign Employee Dean Heimbach                                        6/18/2010
                                                                        Date

Employee Corporate ID

_Laurel A. Link_

Laurel A. Link                                   06/18/2010
Fidelity Representative                           Date

2

Exhibit _2_, Page _20_

March 2008

# EXHIBIT 3

Exhibit **3**, Page **21**

Dean Heimbach
15 Pallazo
Laguna Niguel, CA 92677

S2 48-88728N -822813 842 822613 1183 EST

Exhibit 3 , Page 22



January 19, 2013

Dean Helmbach
15 Pallazo
Laguna Niguel, CA 92677

Dear Dean:

I am writing to confirm certain important information associated with your departure from Fidelity, effective December 13, 2012.

**Benefits:**  Under separate cover, you will receive information about how to continue your life, health and dental insurance coverage.  If you have any questions regarding continued coverage, please feel free to contact Fidelity HR Solutions at (800) 835-5099, Option 1.  If you are a Profit Sharing Plan participant, Fidelity will also send you information regarding your options with respect to this program.  If you have a 401(k) loan, you will receive information under separate cover about options for repayment of your outstanding balance.  Please contact Fidelity HR Solutions at (800) 835-5099, Option 1 with any questions about Profit Sharing Plan participation or 401(k) loans.

**Final Paycheck:**  If you have not received your final paycheck, which will include any accrued but unused vacation/elective holiday time remaining as of your separation date, please contact Fidelity HR Solutions at (800) 835-5099, Option 1 with any questions.

**Employment Verifications:**  Fidelity's policy is to verify dates of employment, job title, employment status and salary information through an employment verification summary and an earnings information summary.  To authorize a third party to obtain a standard employment verification summary or an earnings information summary, follow one of these two options: 1) Go directly to The Work® Number at http://theworknumber.com or 2) If you do not have internet access call HR Solutions at 800-835-5099, Prompt 1.

**Delivery of W-2:**  If you relocate within the calendar year, please notify Fidelity HR Solutions at (800) 835-5099, Option 1 to insure proper delivery of your current year Form W-2.

**Company Property:**  We expect that you returned all Company property on your last day of work, including Confidential Information (see below), files, documents, computer and electronic communications equipment, your identification badge, company credit cards, company telephone cards, building or equipment keys, and any other equipment.  If you have subscribed to any internet on-line services, such as newsletters or other updates, you are responsible for canceling your subscriptions.  If you discover any Company property in your possession in the future, please promptly contact Fidelity HR Solutions at (800) 835-5099, Option 2 for further instructions.

**Confidential Information:**  While you were employed by Fidelity, you became aware of confidential information regarding Fidelity and its affiliates.  Confidential Information consists of all information pertaining to the business of Fidelity or any of its affiliates that was not generally known to the public at the time made known to you.  It includes but is not limited to trade secrets; secret, confidential and proprietary information; information protected



Exhibit _3_, Page _23_

by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing and marketing plans; customer, prospect, vendor and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and all information expressly designated as "Proprietary," "Fidelity Confidential," "Fidelity Highly Confidential," "Fidelity Restricted," or "Fidelity Internal Use Only".   If you kept any confidential information belonging to Fidelity at the conclusion of your employment, please return it immediately.   You may not use or disclose any confidential information belonging to Fidelity and the confidentiality provisions of the Employee Agreement you signed when you were hired continue to apply.   I have attached a copy of your Employee Agreement.   Please note you are obligated to bring this agreement to the attention of any future employer.

<u>Inventions</u>:   Please be reminded that inventions that you made or conceived during your employment with Fidelity are Fidelity's exclusive property to the extent that any such ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "inventions"), whether or not patentable or copyrightable and whether conceived of solely or jointly, (i) were along the lines of the business or work of any of the Fidelity companies; (ii) resulted from or were suggested by any work which you did for the Fidelity companies; (iii) were made or conceived using equipment or other materials belonging to Fidelity; or (iv) were made or conceived during regular hours of work.   You may not pursue any of these inventions on your own behalf or on behalf of any new employer without prior written permission from Fidelity.   In addition, Fidelity may call upon you in the future for assistance in obtaining, maintaining, or enforcing patents, copyrights, trademarks, or other legal protection in connection with inventions.

<u>Non-Solicitation of Customers and Employees</u>:   Please be reminded that for a period of one year following your departure, you may not directly or indirectly hire or solicit any Fidelity employee to leave his/her employment. For this same period of time, you may not directly or indirectly solicit any customer to cease any business relationship with Fidelity, or do certain types of business with customers with whom you had personal contact during your employment.   The specific terms of your obligations with respect to non-solicitation are set forth in the Employee Agreement you signed upon hire (copy attached).

We wish you success in your future career endeavors.   Please feel free to contact Fidelity HR Solutions at (800) 835-5099 if you have any questions or concerns about this information.

Sincerely,
Fidelity HR Solutions


Attachments:
     Employee Agreement


a486744

Exhibit _3_ , Page _24_

DocuSign Envelope ID: 608EE0A0-7751-4BE2-AF49-E0E98EC2AB55

## EMPLOYEE AGREEMENT

Dean Helmbach _____ ("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory and other obligations.

1.    Confidential Information.  To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customers, prospect, vendor and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

2.    · Systems Access.  In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3.    Company Property.  Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4.    Outside Business Activities.  So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5.    Ethics and Outside Brokerage Accounts.  So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker/dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either of Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6.    · Non-solicitation.  In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any

March 2008.

Employee's Initials ___

DS
DH

Exhibit _3_ , Page _25_

DocuSign Envelope ID: 608EE0A0-7751-4BE2-AF49-E0E96EC2AB55

manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies; Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7.      **Inventions and Use of Name or Likeness.** Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8.      **Agreements with Others.** Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9.      **At Will Employment.** Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10.     **Miscellaneous.** This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors and its assigns. This agreement is governed in accordance with Massachusetts law and is signed under seal.

This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.

*Dean Heimbach*
DocuEmployee@ean Heimbach

Jun-18-2010 | 13:30 PT
6/18/2010
Date

Employee Corporate ID

*Laurel A. Link*
Laurel A. Link
Fidelity Representative

06/18/2010
Date

Exhibit _3_, Page _26_

# EXHIBIT 4

## AFFIDAVIT OF DEAN HEIMBACH

DEAN HEIMBACH, being first duly sworn, states as follows:

1.       My name is Dean Heimbach and I am over the age of 18. Except where otherwise indicated, the statements contained herein are based on my personal knowledge. I was employed by Fidelity Brokerage Services LLC ("Fidelity") as an Investor Center Account Executive in Brea Orange County, California until I resigned my employment effective, December 13, 2012. I am now employed by Capstone Affluent Strategies, which is affiliated with LPL Financial ("LPL").

2.       I hereby state that I have returned to Leslie Blickenstaff at Fidelity, and therefore do not have in my possession, custody or control, customer lists (including any Christmas or holiday card lists), records, electronic data, computer files, or documents pertaining to Fidelity customers or individuals or entities I became aware of through my employment at Fidelity, including but not limited to names, phone numbers, addresses and/or e-mail addresses, account numbers and/or financial and/or account information of Fidelity customers whether in original, copied, computerized, handwritten, or any other form. This includes any documents created either during or after I left my employment with Fidelity that contain information pertaining to Fidelity clients that I worked with or Fidelity clients or individuals or entities I became aware of through my employment at Fidelity, including information created from my memory. This includes information kept at my place of employment or personally. For electronically maintained information, after printing a copy to return, I have secured the deletion of that information from all computer files or other electronic equipment, including, cellular telephones, personal data assistants, DVDs, CD-ROMs, USB storage devices, floppy disks, Zip drives, flash drives memory cards or other electronic devices within my employer's custody or control.

3.       In connection with sending out an announcement of my new employment, Capstone Affluent Strategies had access to customer information I am returning.  I have not given any of the above documents or information or copies thereof to any other person or entity, including LPL. As of the

1

Exhibit _4_, Page _28_

date of this Affidavit, neither LPL nor Capstone Affluent Strategies has copies of the above

information in their possession in any form.

4.      I will abide by the obligations contained in my Employee Agreement with Fidelity, a copy of

which is attached hereto and incorporated herein as Exhibit A.

Pursuant to 28 USC §1746, I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

Executed on    1/24/13                          *Dean W. Heimbach*

                                                Dean Heimbach

Sworn to and subscribed before me
this _____ day of January, 2013

_____           *see attached Notary*
Notary Public

2

Exhibit _4_ , Page _29_

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**    CIVIL CODE § 1189

State of California

County of _____ ORANGE _____ }

On 24 JAN 13 before me, _____ V. E. FLEMING _____
    Date                              Here Insert Name and Title of the Officer

personally appeared _____ Dean HeimBacH _____
                                  Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> V. E. FLEMING
> Commission # 1994419
> Notary Public - California
> Orange County
> My Comm. Expires Oct 19, 2016

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
                 Signature of Notary Public

Place Notary Seal Above

———————— OPTIONAL ————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | | Signer's Name: _____ | |
|---|---|---|---|
| ☐ Corporate Officer — Title(s): _____ | | ☐ Corporate Officer — Title(s): _____ | |
| ☐ Individual | RIGHT THUMBPRINT OF SIGNER | ☐ Individual | RIGHT THUMBPRINT OF SIGNER |
| ☐ Partner — ☐ Limited ☐ General | Top of thumb here | ☐ Partner — ☐ Limited ☐ General | Top of thumb here |
| ☐ Attorney in Fact | | ☐ Attorney in Fact | |
| ☐ Trustee | | ☐ Trustee | |
| ☐ Guardian or Conservator | | ☐ Guardian or Conservator | |
| ☐ Other: _____ | | ☐ Other: _____ | |
| Signer is Representing: _____ | | Signer is Representing: _____ | |

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

Exhibit 4, Page 30

DocuSign Envelope ID: 608EE0A0-7751-4BE2-AF49-E0E96EC2AB55

## EMPLOYEE AGREEMENT

Dean Heimbach_____ ("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory and other obligations.

1.      Confidential Information.  To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies.  Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee.  It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customers, prospect, vendor and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal."  All Confidential Information is imparted to Employee in a relationship of confidence.  As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies.  Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment.  Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information.  Employee will not open, read, or in any way access Confidential Information without authorization.

2.      Systems Access.  In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)").  Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy.  While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity.  Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage.  Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3.      Company Property.  Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4.      Outside Business Activities.  So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures.  Approval for outside activities may be withdrawn at any time.

5.      Ethics and Outside Brokerage Accounts.  So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures or guidelines regarding Fidelity's standards for the proper conduct of business.  If Employee is an employee of or associated with a registered broker/dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards and guidelines of the Fidelity Companies applicable to those in regulated businesses.  Neither Employee nor Employee's spouse will maintain any brokerage account that either of Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6.      Non-solicitation.  In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies.  During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any

March 2008

Employee's Initials_____

## Exhibit 4 , Page 31

DocuSign Envelope ID: 608EE0A0-7751-4BE2-AF49-E0E96EC2AB55

manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment,

7.      **Inventions and Use of Name or Likeness.**  Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8. .    **Agreements with Others.**  Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9.      **At Will Employment.**  Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10.     **Miscellaneous.**  This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors and its assigns. This agreement is governed in accordance with Massachusetts law and is signed under seal.

This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.

Jun-18-2010 | 13:30 PT
                                           6/18/2010
                                           Date

Employee Corporate ID

*Laurel A. Link*

Laurel A. Link
Fidelity Representative

                                           06/18/2010
                                           Date

March 2008

2

Exhibit _4_ , Page _32_

| First | Last | Address | City | State | Zip |
|---|---|---|---|---|---|
| T | A | | Walnut | CA | 91789 |
| N | Ai | | Yorba Linda | CA | 92887 |
| G | A | | Lakewood | CA | 90713 |
| D | A | | Orange | CA | 92866 |
| Al | A | | Fullerton | CA | 92833 |
| J | B | | Hemet | CA | 92545 |
| Bi | Ba | | La Habra | CA | 90631 |
| D | B | | Corona | CA | 92882 |
| F | B | | Rancho Cucamonga | CA | 91730 |
| C | Bi | | Anaheim | CA | 92807 |
| Dr | C | | Placentia | CA | 92870 |
| J | Ci | | Fullerton | CA | 92833 |
| E | C | | Cerritos | CA | 90703 |
| J | C | | Alta Loma | CA | 91737 |
| B | Ci | | Fullerton | CA | 92835 |
| Dr.L | C | | Anaheim | CA | 92807 |
| L | C | | Cerritos | CA | 90703 |
| P | D | | Covina | CA | 91723 |
| R | D | | Brea | CA | 92821 |
| M | Di | | Brea | CA | 92821 |
| B | R | | Yorba Linda | CA | 92885 |
| Dr.R | G | | Fullerton | CA | 92838 |
| P | G | | Diamond Bar | CA | 91765 |
| G | Gi | | La Habra | CA | 90631 |
| R | G | | Anaheim | CA | 92806 |
| T | H | | Yorba Linda | CA | 92886 |
| J | Hi | | Anaheim Hills | CA | 92807 |
| L | H | | Fullerton | CA | 92835 |
| E | | | Yorba Linda | CA | 92887 |
| E | | | Covina | CA | 91724 |
| W | | | Alta Loma | CA | 91701 |
| | | | Villa Park | CA | 92861 |
| | | | Cerritos | CA | 90703 |

REDACTED MATERIAL

| | | City | State | Zip |
|---|---|---|---|---|
| B | H | Chino | CA | 91710 |
| K | H | Lake Elsinore | CA | 92530 |
| W | H | Yorba Linda | CA | 92886 |
| G | H | Fullerton | CA | 92835 |
| H | H | Yorba Linda | CA | 92887 |
| G | H | Maple Valley | WA | 90838 |
| M | J | Brea | CA | 92821 |
| E | J | La Habra | CA | 90631 |
| S | J | Covina | CA | 91724 |
| J | K | Brea | CA | 92821 |
| D | K | Alta Loma | CA | 91701 |
| R | K | Yorba Linda | CA | 92886 |
| T | L | Redlands | CA | 92373 |
| B | L | Canyon Lake | CA | 92587 |
| H | L | Fullerton | CA | 92838 |
| F | L | Fullerton | CA | 92833 |
| R | L | Chino | CA | 91710 |
| A | M | Yorba Linda | CA | 92887 |
| D | M | Fullerton | CA | 92835 |
| D | M | Rancho Cucamonga | CA | 91739 |
| N | M | Yorba Linda | CA | 92887 |
| P | M | Placentia | CA | 92870 |
| S | M | Yorba Linda | CA | 92887 |
| V | M | Fontana | CA | 92336 |
| G | M | Yorba Linda | CA | 92887 |
| A | N | Yorba Linda | CA | 92886 |
| L | N | Walnut | CA | 91789 |
| B | O | Buena Park | CA | 90620 |
| R | P | La Habra Heights | CA | 90631 |
| R | P | La Mirada | CA | 90638 |
| C | | Brea | CA | 92821 |
| B | | Upland | CA | 91784 |
| K | | Brea | CA | 92823 |
| W | | Brea | CA | 92821 |

REDACTED MATERIAL

| City | State | Zip |
| --- | --- | --- |
| San Dimas | CA | 91773 |
| Yorba Linda | CA | 92886 |
| Chino Hills | CA | 91709 |
| Fullerton | CA | 92835 |
| Placentia | CA | 92870 |
| Santa Fe Springs | CA | 90670 |
| Corona | CA | 92882 |
| La Habra Heights | NV | 90631 |
| Glenbrook | CA | 89413 |
| Placentia | CA | 92870 |
| Covina | CA | 91724 |
| Walnut | CA | 91789 |
| Norco | CA | 92860 |
| Garden Grove | CA | 92840 |
| Eastvale | CA | 92880 |
| Lakewood | CA | 90715 |
| Brea | CA | 92821 |
| Brea | CA | 92821 |
| Brea | CA | 92821 |
| La Puenta | CA | 91744 |
| Cerritos | CA | 90703 |
| Fullerton | CA | 92835 |

Exhibit 4 , Page 35

REDACTED MATERIAL

# EXHIBIT 5

Exhibit _5_, Page _36_

F.  .C.    in Cerritos, CA |    ePages

WhitePages

- First name  f.
- *.Last name   c
- City, State or ZIP  cerritos ca                    Submit Query

Advertisement:See your 2013 Credit Score Now $0
Advertisement:729 is an Excellent Credit Score. What's Yours?



Sprint

TO HELL
AND BACK.

CHECK IT OUT
Restrictions apply.

Exhibit _5_, Page _37_              REDACTED MATERIAL

F    C    in Cerritos, CA | ...tePages

**nielsen**

▷ **Part Time Outs...**
Do you know what
consumers buy? What
consumers watch...
**Nielsen | Chicago, IL**

▷ **Driver - Dedicated Team Truck...**
This Dedicated team truck driver ...
Schneider Nati... | Chicago, IL

▷ **Chief Compliance Officer, CME...**
Overview: Reporting to the SDR Pr...
CME Group | Chicago, IL

View More Opportunities!          Interest Based Ad

*3* Results for

# F    C    in Cerritos, CA

See in map»
**Or search:**

- Last name only

1. **F      C**
   (Age 60-64)
2. **Christina Way**
   **Cerritos, CA**
3. **Associated people:**
   Leon C
   Charles Y C
   + more...

See full listing »

1. **F    Y Cl**
   (Age 65+)
2. **Charlwood St**
   **Cerritos, CA**
3. **Associated people:**
   Shu Y C.
   Louise C C.
   + more...

See full listing »

1. **F      R C**
   (Age 65+)
2. **Carnaby St**
   **Cerritos, CA**
3. **Associated people:**
   Cathy Y C
   + more...

See full listing »

Exhibit _5_ , Page _38_

REDACTED MATERIAL

| F    Y C (Age 73) ☑ | Cerritos, CA<br>EMAIL»  PHONE»  ADDRESS» | VIEW LISTING ❯ |
| --- | --- | --- |
| F    R C (Age 67) | Cerritos, CA<br>EMAIL»  PHONE»  ADDRESS» | VIEW LISTING ❯ |

Sponsored by Instant Checkmate

## Additional Suggestions

1. **F____ C**
   (Age 40-44)
2. **Dumaine Dr**
   **La Palma, CA**
3. **Associated people:**
   Karen L Gray
   Jane W C
   + more...

See full listing »

1. **F____ C C**
   (Age 65+)
2. **N Devonshire Rd**
   **Anaheim, CA**
3. **Associated people:**
   Michael T C
   Grace W C
   + more...

See full listing »

1. **F____ J C**
   (Age 40-44)
2. **Pomering Rd**
   **Downey, CA**
3. **Associated people:**
   Daniel F. C
   Lucero Chavez
   + more...

See full listing »

1. **F    M C**
   (Age 65+)
2. **Stacie Ln**
   **Anaheim, CA**
3. **Associated people:**
   unknown

See full listing »

1. **F    C**

Exhibit _5_, Page _39_        REDACTED MATERIAL

F    C    - in Cerritos, CA | .    tePages                                    Page 4 of 4

2. **N West St**
   **Anaheim, CA**
3. **Associated people:**
   Alexander Cl
   Annie Llang
   + more...

See full listing »

1. **F_       K C**
   (Age 60-64)
2. **Gun Tree Dr**
   **Hacienda Heights, CA**
3. **Associated people:**
   Amy C'
   Gloria Y C
   + more...

See full listing »

1. **Fi       Cl _____**
2. **PO Box**
   **City Of Industry, CA**
3. **Associated people:**
   Sheng Y Cl
   + more...

See full listing »
Loading...



© 2013 WhitePages Inc. - Privacy Policy and Terms of Use

Exhibit 5, Page 40          REDACTED MATERIAL

G   F      in Anaheim, CA | WhitePages                                      Page 1 of 4

WhitePages

- First name g'
- * Last name  f
- City, State or ZIP  Anaheim CA                    Submit Query

Advertisement:In minutes, your $0 Score
Advertisement:729 Is an Excellent Credit Score. What's Yours?

Exhibit _5_, Page _41_        REDACTED MATERIAL

G    F      : in Anaheim, CA | WhitePages

*2* Results for

# G      F        in Anaheim, CA

See in map»
**Or search:**

- Last name only

1. **G      A F**
2. (Age 25-29)
3. **S Old Bridge Rd**
   **Anaheim, CA**
4. **Associated people:**
   Nancy S F
   Meredith F
   + more...

See full listing »

1. **G     W F**
2. (Age 50-54)
3. **S Mountvale Ct**
   **Anaheim, CA**
4. **Associated people:**
   Sheri L F
   Cody F
   + more...

See full listing »

## Additional Suggestions

1. **G     M F**
2. (Age 40-44)
3. **Ellmar Cir**
   **Santa Ana, CA**
4. **Associated people:**
   Leisa S Osgac

Exhibit _5_, Page _42_

REDACTED MATERIAL

Carol J F
+ more...

See full listing »

1. **G     W F**
   (Age 35-39)
2. **Monte Vis**
   **Irvine, CA**
3. **Associated people:**
   Julia B F
   + more...

See full listing »

1. **G      J F**
   (Age 60-64)
2. **Timothy Dr**
   **Dana Point, CA**
3. **Associated people:**
   Johanna J F
   Julia F
   + more...

See full listing »

1. **G     L F      Sr**
   (Age 50-54)
2. **PO Box**
   **Phelan, CA**
3. **Associated people:**
   Chuck F
   Wendy C F
   + more...

See full listing »

1. **G    , H F**
   (Age 60-64)
2. **S Center St**
   **Redlands, CA**
3. **Associated people:**
   Erin F
   Donita J F
   + more...

See full listing »

1. **G    , F**
2. **E Brockton Ave**
   **Redlands, CA**
3. **Associated people:**
   Bobby J Hickman
   Pia J Hickman
   + more...

Exhibit _5_, Page _43_

REDACTED MATERIAL

G        F        in Anaheim, CA | ...tePages                                    Page 4 of 4

See full listing »

1. **G       H F**
   (Age 60-64)
2. **Overcrest Dr
   Redlands, CA**
3. **Associated people:**
   Erin F
   Amy R F
   + more...

See full listing »

1. **G       A F**
   (Age 45-49)
2. **57th St W
   Lancaster, CA**
3. **Associated people:**
   unknown

See full listing »
Loading...

© 2013 WhitePages Inc. - Privacy Policy and Terms of Use

Exhibit _5_, Page _44_                    REDACTED MATERIAL

<u>WhitePages</u>

- First name  sl
- * Last name  j
- City, State or ZIP  covina CA        [Submit Query]

Advertisement:<u>Track your Credit Score</u>
Advertisement:<u>729 is an Excellent Credit Score. What's Yours?</u>

*AT&T plans put the wind in Chicago's small businesses' sails.*

*2 Results for*

# S      J      in Covina, CA

<u>See in map</u>»
**Or search:**

- <u>Last name only</u>

1. **Sl       K J**
   (Age 55-59)
2. **E Workman St
   Covina, CA**
3. **Associated people:**
   unknown

Exhibit _5_, Page _45_        <span>REDACTED MATERIAL</span>

S.      .J     .in Covina, CA   /hitePages                                                Page 2 of 4

See full listing »

1. **S        D J**
   (Age 55-59)
2. **E Cypress St**
   **Covina, CA**
3. **Associated people:**
   April K Stanford
   Jerry Pounds
   + more...

See full listing »

## Additional Suggestions

1. **S        J S J**
   (Age 65+)
2. **LA Sena Ave**
   **Baldwin Park, CA**
3. **Associated people:**
   unknown

See full listing »

1. **S        A J**
   (Age 50-54)
2. **Tressy Ave**
   **Glendora, CA**
3. **Associated people:**
   Alyssa C J
   Kyle E J
   + more...

See full listing »

1. **S        L J**
   (Age 50-54)
2. **G St**
   **La Verne, CA**
3. **Associated people:**
   May J
   Philip S May
   + more...

See full listing »

1. **S        L J**
   (Age 45-49)
2. **Sage Canyon Rd**
   **Phillips Ranch, CA**
3. **Associated people:**
   Sean M J
   + more...

See full listing »

Exhibit _5_, Page _46_                REDACTED MATERIAL

1. **S    | D J**
   (Age 65+)
2. **Hillmar Dr
   Diamond Bar, CA**
3. **Associated people:**
   David R J
   Mary F J
   + more...

See full listing »

1. **S        J J**
   (Age 60-64)
2. **Glen Oaks Dr
   La Verne, CA**
3. **Associated people:**
   Coleman J
   Stephen B J
   + more...

See full listing »

1. **S        W J**
   (Age 65+)
2. **Pintura Dr
   Hacienda Heights, CA**
3. **Associated people:**
   William Zhang
   David W J
   + more...

See full listing »

1. **S        L J**
   (Age 60-64)
2. **Kimbark Ave
   Whittier, CA**
3. **Associated people:**
   Steven L J
   + more...

See full listing »
Loading...



Exhibit *5*, Page *47*

REDACTED MATERIAL