1  MARVIN BARTEL #107531
   mbartel@bartelevans.com
2  MORGAN R. EVANS #198278
   mevans@bartelevans.com
3  BARTEL & EVANS LLP
   4695 MacArthur Court, Suite 1550
4  Newport Beach, CA 92660
   Telephone: (949) 752.3700
5  Facsimile: (949) 752.3701

6  Attorneys for Defendant
   DEAN HEIMBACH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>DEAN HEIMBACH,<br><br>　　　　　Defendant. | Case No. CV 13-0573 AG (ANx)<br>Assigned for all Purposes to the Hon. Andrew Guilford<br><br>**DECLARATION OF ROBERT WRONA IN SUPPORT OF DEFENDANT DEAN HEIMBACH'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>(Opposition to Plaintiff's Ex Parte Application for OSC re Preliminary Injunction; Declaration of Dean Heimbach; and Evidentiary Objection to Declarations of Michael MacDonald, Linda Park Leslie Blickenstaff and Eric Bronner Filed Concurrently Herewith)<br><br>Date: April 29, 2013<br>Time: 10:00 a.m.<br>Courtroom: |

I, ROBERT WRONA, hereby declare as follows:

1. I currently reside in Fullerton, California. I frequently go by the name Bob, and not Robert. My spouse is named Barbara, with the same surname, Wrona. The following facts are known to me personally and if called upon as a witness I could and would competently testify thereto. I am voluntarily providing this declaration for Mr. Dean Heimbach and I have authorized his attorneys to disclose my identity to the Court.

2. I am a customer of Fidelity Brokerage Services, Inc. ("Fidelity"). For a period of time my account executive at Fidelity was Mr. Heimbach. Mr. Heimbach provided excellent service to me and I enjoyed working with him when he was Fidelity.

3. In December 2012, I received an announcement in the mail from a company called Capstone that announced that Mr. Heimbach was now affiliated with that company.

4. In response to that announcement I contacted Mr. Heimbach via telephone and asked him to meet with me at my residence. I provided him with my home address and set up a date and time to meet with him. When Mr. Heimbach appeared at my residence it was at my express invitation. At no time during that visit or during any other visit did he show me, indicate to me or tell me that he had in his possession any of my account information or account details from Fidelity. He never presented to me or showed me any pre-printed forms or any other documents that contained any of my Fidelity account details or information. He never showed me any documents that had any Fidelity information, either regarding my account or otherwise. He never made any statements to me that indicated or suggested to me that he was in possession of any Fidelity information or documentation. To the contrary at our meeting I showed him my account statements from Fidelity that I had received in the mail from Fidelity.

5. After Mr. Heimbach's departure from Fidelity I received a letter from Fidelity notifying me of the identity of the new account executive assigned to my account.

6. In mid to late March 2013 I received a telephone call from a Linda Park. She told me that she was employed at Fidelity. In that telephone call she told me that someone named "Bob" was trying to log into or access my accounts at Fidelity. I told Ms. Park that I had not provided or approved electronic access to anyone for my accounts at Fidelity. During that call I also complained to her that I had never received any telephone call from the account executive at Fidelity who had been assigned to my account. At no time during that telephone call did Ms. Park ever ask me if I had placed any calls to Fidelity complaining about Mr. Heimbach.

7. At no time after Mr. Heimbach's departure from Fidelity did I ever place a telephone call or instruct anyone on my behalf to make a telephone call to Fidelity to express or voice any complaint or displeasure about Mr. Heimbach. I never placed a telephone call or was transferred to any so-called "chairman's line" to speak or complain to anyone at Fidelity about Mr. Heimbach. I was provided with a copy of the document that is attached as Exhibit A to the Declaration of Michael MacDonald. I have reviewed the entry for March 13, 2013, on that document that describes a conversation that someone at Fidelity claims to have had with a Fidelity customer. If anyone is attempting to attribute those statements in that telephone call to me, that is a false statement. I never made such a call and never would have made those statements about Mr. Heimbach as they are completely false. When speaking and interacting with me, Mr. Heimbach has always acted in an ethical and professional manner.

8. For Fidelity to attribute those statements to me is very upsetting. At no time did anyone from Fidelity call me and ask me if I had placed a

1 telephone call and made those statements about Mr. Heimbach. When calling
2 me in March Ms. Park could have asked me if I had made such a call and I
3 would have informed her that I did not. At no time did anyone else from
4 Fidelity call me to ask me about my interactions with Mr. Heimbach. If
5 someone from Fidelity had contacted me to ask me if I had made the telephone
6 call referenced in Exhibit A I would have told that Fidelity employee that I
7 made no such telephone call, that the statements that were made in that call are
8 untrue, and that Mr. Heimbach never appeared at my residence with any
9 documents containing any of my personal information, my Fidelity account
10 details or any other Fidelity information.
11     I declare under penalty of perjury under the laws of the United States of
12 America that the foregoing is true and correct.
13     Executed this 12th day of April 2013.

ROBERT WRONA

DECLARATION OF ROBERT WRONA IN SUPPORT OF OPPOSITION TO TRO